IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| IRA DARLINA BAKER, *et al.*, § <br> § <br> Plaintiffs, § <br> § <br> v. § <br> § <br> RICHARD KEITH COBURN, *et al.*, § <br> § <br> Defendants. § | Civil Action No. 2:19-cv-00077-Z-BP |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court are Defendants' Motion to Dismiss and Brief in Support, ECF Nos. 10 and 11, and Plaintiffs' Response and Brief in Support, ECF Nos. 14 and 15. Based upon a full review of the relevant pleadings on file and applicable legal authorities, the undersigned **RECOMMENDS** that United States District Judge Matthew J. Kacsmaryk **DENY** Defendants' Motion.

**I.     BACKGROUND**

This is a case involving an unarmed twenty-three-year-old man who was shot in the back as he and his passenger drove away from police officers who were attempting to stop them. The man who was shot and later died was named Darion Dev'on Baker ("Baker"). His mother, Ira Darlina Baker ("Mrs. Baker"), and his father, Mario Baker ("Mr. Baker") (collectively "the Bakers"), bring this suit under 42 U.S.C. §§ 1983 and 1988 against the City of Stratford, Texas police officers involved in the shooting in their individual capacities. Those officers are Richard Keith Coburn ("Coburn") and Michael Joseph McHugh ("McHugh") (collectively "the officers"). The following facts are taken from the Bakers' Complaint. They are accepted as true and viewed

in the light most favorable to the Bakers at this stage of the litigation, as required by *McCartney v. First City Bank*, 970 F.2d 45, 47 (5th Cir. 1992).

On February 21, 2018, Baker and his friend, both African American males, were driving through Texas on their way home to Memphis, Tennessee. The officers were in their police unit with their service dog observing traffic when they first saw Baker's car. They followed his car for several miles as it came into Stratford. Baker pulled into the gas pumps at the Pilot Travel Center to fill up and to get directions in the store. A few minutes later, the officers drove into the parking lot of the Pilot station and parked near the store entrance. Officer Coburn entered the store to observe Baker and his friend while Officer McHugh stayed in their police vehicle outside. After several minutes during which Baker prepaid for the gas, he and his friend exited the store as Officer Coburn held the door for them. They went to fill up their car, and Officer Coburn returned to his vehicle. Baker sat in the driver seat of his car while his friend filled the tank.

Shortly thereafter, the officers drove directly behind Baker's car and turned on their vehicle's lights and sirens. The officers got out of their vehicle, with guns drawn, and ran toward Baker's car. "Panicked," Baker started his car, his friend jumped into the passenger seat, and Baker began to drive away, "carefully navigating around the officers." ECF No. 1 at 4, ¶¶ 19-20. Both officers fired their weapons at the car numerous times as it pulled away, "despite the car posing absolutely no danger to the officers or anyone else." *Id.*, ¶ 21. The Bakers allege that Baker was no danger to the officers as he pulled his car away from them and that the officers faced no threat of "immediate and severe physical harm." *Id.*, ¶ 22. Coburn ran after the car and continued firing his gun at it. McHugh fired a total of five shots at the car, and Coburn fired fifteen shots at it. Baker was hit twice in the back. Baker's car "slowed to a slow roll" and came to rest at another convenience store located across the street from the Pilot service station. *Id.*, ¶ 23. Neither of the

2

officers was injured. Neither Baker nor his friend was armed. Baker died at the scene "after suffering intense pain." *Id.*, ¶ 28.

The Bakers assert that the officers violated their son's rights under the Fourth and Fourteenth Amendments to the United States Constitution to be free from excessive force and unreasonable seizure. They assert that the force the officers used was "clearly excessive to the need" and was "objectively unreasonable in light of clearly established law." *Id.*, ¶ 31. Mrs. Baker, as administratrix of Baker's estate, seeks to recover damages for Baker's mental anguish, physical pain, and loss of enjoyment of life, as well as funeral and burial expenses. The Bakers, as wrongful death beneficiaries on behalf of themselves and any other beneficiaries, seek to recover damages for past and future mental anguish, loss of companionship, medical expenses, and pecuniary loss. The Bakers also seek to recover their attorneys' fees and expenses.

The Bakers filed their Original Complaint on April 15, 2019. ECF No. 1. The officers filed the instant Motion to Dismiss and supporting Brief on May 13, 2019, asserting that the Bakers failed to state a claim for relief because Baker's constitutional rights were not violated and because the officers are entitled to qualified immunity. ECF Nos. 10 and 11. The Bakers responded, claiming that they had adequately pleaded a violation of Baker's constitutional rights and that the officers are not entitled to qualified immunity in this case. ECF Nos. 14 and 15. The Bakers sought leave to amend their Complaint if the Court granted the officers' Motion to Dismiss. The officers did not file a reply to the Bakers' response.

## II. LEGAL STANDARDS

### A. Rule 12(b)(6) Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

The Rules require that a pleading stating a claim for relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a). Accordingly, a complaint must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering a Rule 12(b)(6) motion, courts must "take all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff . . . and ask whether the pleadings contain 'enough facts to state a claim to relief that is plausible on its face.'" *Yumilicious Franchise, L.L.C. v. Barrie*, 819 F.3d 170, 174 (5th Cir. 2016) (citing *Twombly*, 550 U.S. at 547). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 557).

When considering motions to dismiss section 1983 claims against public officials, the Court must not accept conclusory allegations or unwarranted deductions of fact as true because the Fifth Circuit's heightened pleading standard requires "claims of specific conduct and actions giving rise to a constitutional violation." *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). Thus, the issue now before the Court "is not whether [ ] plaintiff[s] will ultimately prevail but whether [they are] entitled to offer evidence to support [their] claims." *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996).

### B.   42 U.S.C. § 1983

"Section 1983 provides a claim against anyone who 'under color of any statute, ordinance, regulation, custom, or usage, of any State' violates another's constitutional rights." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013), *cert. denied,* 572 U.S. 1087 (2014). "To state a section 1983 claim, 'a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of

4

the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law.'" *James v. Tex. Collin Cty.*, 535 F.3d 365, 373 (5th Cir. 2008) (quoting *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000)).

### C. Qualified Immunity

"Qualified immunity shields government officials performing discretionary functions from liability unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Gibson v. Rich*, 44 F.3d 274, 277 (5th Cir. 1995) (citing *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994)). "[T]he immunity issue must be resolved at the earliest possible stage of the litigation since it entails an entitlement to immunity from suit and not merely a defense to liability." *Id.* (citing *Hunter v. Bryant*, 502 U.S. 224, 226 (1991)).

> Where, as here, a section 1983 defendant pleads qualified immunity and shows he is a governmental official whose position involves the exercise of discretion, the plaintiff then has the burden 'to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law.' *Salas v. Carpenter*, 980 F.2d 299, 306 (5th Cir. 1992). We do 'not require that an official demonstrate that he did not violate clearly established federal rights; our precedent places that burden upon plaintiffs.' *Id.*

*Thompson v. Upshur Cty., TX*, 245 F.3d 447, 456 (5th Cir. 2001) (citing *Pierce v. Smith*, 117 F.3d 866, 871-72 (5th Cir. 1997)). "Despite this burden-shifting, all reasonable inferences must be drawn in the non-movant plaintiff's favor." *Hyatt v. Thomas*, 843 F.3d 172, 177 (5th Cir. 2016) (citing *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010)).

"Qualified immunity 'provides ample protection to all but the plainly incompetent or those who knowingly violate the law.'" *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 380 (5th Cir. 2005) (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). A court "will not deny immunity unless 'existing precedent . . . placed the statutory or constitutional question beyond debate[.]'" *Whitley*, 726 F.3d at 638 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741

5

(2011)). To overcome the defense of qualified immunity, a plaintiff must show "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." A*l-Kidd*, 563 U.S. at 741 (citations omitted). "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' [such] that every 'reasonable official would have understood that what he is doing violates that right.'" *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The Court may decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

### III. ANALYSIS

Viewing the Complaint in the light most favorable to the Bakers and accepting all well-pleaded allegations as true, the undersigned concludes that the officers' use of deadly force against Baker on February 21, 2018 was not objectively reasonable and that the officers violated a clearly established constitutional right. Accordingly, their Motion to Dismiss should be denied.

**A. The Bakers have alleged a violation of Baker's Fourth Amendment rights.**

To state a claim for excessive force against a police officer, a plaintiff must demonstrate "(1) an injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Ontiveros v. City of Rosenberg*, 564 F.3d 379, 382 (5th Cir. 2009) (citations omitted). "An officer's use of deadly force is presumptively reasonable when the officer has reason to believe that the suspect poses a threat of serious harm to the officer or to others." *Id.* (citations omitted). The court must determine the reasonableness of the deadly force "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396-97 (1989).

This inquiry "requires careful attention to the facts and circumstances of each particular case, including (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. "It is objectively unreasonable to use deadly force unless it is necessary to prevent a suspect's escape and the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." *Flores v. City of Palacios*, 381 F.3d 391, 399 (5th Cir. 2004) (citing *Tennessee v. Garner*, 471 U.S. 1, 3 (1985)). "Excessive force claims are [thus] necessarily fact-intensive . . . [and depend] on the facts and circumstances of each particular case." *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) (per curiam) (citations and quotation marks omitted).

The Bakers allege that their son was killed as a result of force that was clearly excessive and unreasonable under the circumstances. They allege that at the time he was shot Baker was unarmed, not a threat to the officers or any other persons, and not accused of a crime. Although Baker was evading the officers when he was shot, the law was settled at the time of his shooting that law enforcement officers could not exercise deadly force against a person who was evading arrest, but who did not pose any risk or danger to the officers or other persons.

*Garner* is the beginning point for analysis of cases involving "the use of deadly force to prevent the escape of an apparently unarmed suspected felon." 471 U.S. at 3. In that case, Garner stole a purse and $10 from a house and then ran from the police. As Garner started to climb a fence after being instructed to halt, a police officer fatally shot him in the back of the head. Garner's father sued the police department and others under § 1983 for his son's death. Ultimately, the district court found that the officer's actions were constitutional. The Sixth Circuit reversed, and the Supreme Court affirmed, holding that deadly force may not be used against a suspected felon

who is apparently unarmed and not dangerous unless the law enforcement officer has probable cause to believe the suspect poses a significant threat of death or serious bodily harm to the officer or another person. The Court noted "[t]he use of deadly force to prevent the escape of all felony suspects, whatever the circumstances, is constitutionally unreasonable. It is not better that all felony suspects die than that they escape." *Id.* at 11.

But *Garner* is far from the ending point of analysis of Supreme Court cases, particularly those involving car-chases. In *Scott v. Harris*, the Court reversed the Eleventh Circuit and noted that "*Garner* did not establish a magical on/off switch that triggers rigid preconditions whenever an officer's actions constitute 'deadly force.'"). 550 U.S. 372, 382 (2007). The Court has reversed several other cases in which the courts of appeal, including the Fifth Circuit, attempted to apply *Garner* to the facts there at issue. *See Mullenix v. Luna*, ___ U.S. ___, 136 S.Ct. 305 (2015); *Plumhoff v. Rickard*, 572 U.S. 765 (2014). The common denominator in those cases, though, was a high-speed car-chase involving dangerous drivers of the vehicle being pursued. Although they are instructive in the context of all cases in which a police officer is sued after firing on a vehicle, the particular facts of those cases do not strictly apply here where the Bakers have alleged that their son was not armed, not dangerous, and not driving very fast when he was shot and killed.

The Bakers cite two Fifth Circuit cases as more indicative of the law regarding the facts of their son's case. In *Lytle v. Bexar County, Texas*, the court dismissed an appeal of the denial of defendants' motion for summary judgment on qualified immunity grounds in a case where a law enforcement officer fired at the rear of a car and killed an occupant. 560 F.3d 404 (5th Cir. 2009). In reaching its decision on appeal, the court found numerous fact issues existed regarding the reasonableness of the defendant's actions. The court observed "a suspect that is fleeing in a motor vehicle is not so inherently dangerous that an officer's use of deadly force is *per se* reasonable. In

assessing the reasonableness of a police officer's use of force, we must instead delve into the facts and circumstances of each case." *Id.* at 416.

Similarly, in *Flores,* the court affirmed denial of a police officer's motion for summary judgment on qualified immunity grounds in an excessive force case involving a motor vehicle that was driven away from the officer. 381 F.3d at 391. In *Flores*, the officer shot at the plaintiff's car to prevent her escape and arrested her when she stopped the car. In affirming the trial court's denial of the officer's summary judgment motion on this ground, the court noted that the officer's position behind the plaintiff's car at the time of the shooting was an important fact that would indicate that she did not pose any danger to him or others when the officer fired at her.

The officers argue in response that Baker threatened their lives and the safety of others on the road by fleeing from a lawful stop. ECF No. 11 at 6, ¶ 13. They argue further that "Baker intended to and possibly could cause serious injury or death, based not only that he had to 'navigat[e] around' Officer Coburn to avoid running over him, but also that … Baker was fleeing." *Id.* at 11, ¶ 15. These arguments overstate the risk of injury or death to the officers from Baker's actions alleged in the Complaint. Viewing the allegations in the Complaint in the light most favorable to the Bakers, as the Court must at this time do, the undersigned concludes that the Bakers have sufficiently alleged a violation of Baker's constitutional rights. They have alleged facts that if proven would show that Baker posed no reasonable threat to the safety of the officers or others as he drove away from the officers. The allegations in the Complaint sufficiently allege that the officers' shooting of Baker under the facts presented was "clearly excessive" and "clearly unreasonable" as provided in *Poole v. City of Shreveport*, 691 F.3d 624 (5th Cir. 2012).

### B.     The officers are not entitled to dismissal based on qualified immunity.

Defendants assert that the Baker's Complaint should be dismissed because they are entitled to qualified immunity. They cite *Mullenix* and argue that "the law is clearly established that officers are justified in employing deadly force to stop a fleeing suspect who has threatened officers with a deadly weapon." ECF No. 11 at 13, ¶ 19. They argue further that "Baker was fleeing when he threatened officers by nearly running over them with his car." *Id.*, ¶ 20. The Bakers respond that the Complaint alleges that Baker was shot in the back "necessarily after the car passed the officers," and consequently "[t]he law was clearly established that no reasonable officer could shoot at a fleeing car that posed no danger to officers or bystanders." ECF No. 15 at 15.

As pleaded by the Bakers, this case is far closer to *Garner* than any of the more recent Supreme Court cases involving high-speed car chases in which qualified immunity shielded the officers' conduct. If the Bakers' Complaint is to be believed, as the Court must at this stage of the litigation, the officers fired at Baker's car as it was moving away from them and after Baker carefully drove so that he did not strike either of the officers or any other person. According to the Complaint, Baker did not threaten the officers with a weapon, did not drive toward them, and drove carefully to avoid them. There was no high-speed chase. Based on the particular facts of this case, applied carefully as outlined by the Supreme Court in its recent cases, the undersigned concludes that *Garner*, *Lytle*, and *Flores* clearly stated the law existing on February 21, 2018. That prevailing legal authority held that police officers such as Officers Coburn and McHugh were not justified in firing their weapons at a car driven away by an unarmed person after the officers had exited their vehicle with lights and sirens on and approached the car. Accordingly, they are not entitled to be dismissed based upon qualified immunity.

The undersigned notes that "the legally relevant factors bearing upon the [qualified immunity] question will be different on summary judgment than on an earlier motion to dismiss. At the earlier stage, it is the defendant's conduct *as alleged in the complaint* that is scrutinized for 'objective legal reasonableness.'" *McLendon v. City of Columbia*, 305 F.3d 314, 325 (5th Cir. 2002) (internal quotation marks and citations omitted) (original emphasis). "On summary judgment, however, the plaintiff can no longer rest on the pleadings . . . and the court looks to the evidence before it (in the light most favorable to the plaintiff) when conducting the [qualified immunity] inquiry." *Id.* Based on the facts of this case, as alleged by the Bakers, the undersigned concludes that they have adequately pleaded a violation of Baker's Fourth Amendment right to be free from unreasonable seizure and that the officers are not entitled to qualified immunity from their claims. Accordingly, Judge Kacsmaryk should deny Defendants' Motion to Dismiss.

## IV. CONCLUSION

For the foregoing reasons, the undersigned **RECOMMENDS** that United States District Judge Matthew J. Kacsmaryk **DENY** Defendants' Motion to Dismiss, ECF No. 10.

A copy of this Findings, Conclusions, and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Findings, Conclusions, and Recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)(1). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual

findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

Signed January 31, 2020.

_____
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE