**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**AMARILLO DIVISION**

| | | |
|---|---|---|
| **IRA DARLINA BAKER, Individually** | § | |
| **as Next Friend of DARION DEV'ON** | § | |
| **BAKER, *et al.*,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | Civil Action No. 2:19-cv-00077-Z-BP |
| | § | |
| **RICHARD KEITH COBORN, *et al.*,** | § | |
| | § | |
| **Defendants.** | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court are Defendants' Motion for Summary Judgment, Brief in Support, and Appendix, filed on August 18, 2020 (ECF Nos. 37-39); Plaintiffs' Response, Brief in Support, and Appendix, filed on September 25, 2020 (ECF Nos. 51-53); and Defendants' Reply and Brief in Support, filed on October 9, 2020. ECF Nos. 57 and 58. Senior United States District Judge Sidney A. Fitzwater referred this case to the undersigned for pretrial management by Order entered on April 29, 2019. ECF No. 7. By Special Order 3-327, the case was reassigned from Judge Fitzwater to United States District Judge Matthew J. Kacsmaryk on August 1, 2019. ECF No. 16.

Based upon a full review of the relevant pleadings on file and applicable legal authorities, the undersigned **RECOMMENDS** that Judge Kacsmaryk **GRANT** in part and **DENY** in part Defendants' Motion for Summary Judgment (ECF No. 37).

**I.    BACKGROUND**

Ira Darlina Baker, individually and as administratrix of the Estate of Darion Dev'on Baker (Darion Baker will be referred to as "Baker"); Mario Baker; and Arlandra Williford, as next friend of Baker's minor child, C.W., (collectively "Plaintiffs"), bring this suit against Officer Richard

Keith Coborn ("Coborn"), Officer Michael Joseph McHugh ("McHugh") (collectively "the officers"), and the City of Stratford, Texas ("the City") under 42 U.S.C. § 1983 for excessive force in causing Baker's death during an attempted arrest. ECF No. 48 at 1-3. Three video cameras captured portions of the events at issue in the case: the Pilot Surveillance Camera (ECF No. 52, Exhibit 1), the police SUV dash camera (ECF Nos. 39, Exhibit D, and 52, Exhibit 2), and McHugh's body camera (ECF Nos. 39, Exhibit C, and 52, Exhibit 3). The parties tendered separate flash drives containing these videos to the Clerk of Court for filing. For ease of reference, the Court will refer to the videos as "Pilot video," "Dashcam video," and "McHugh video," and will reference time entries on the videos from the beginning of the particular video feed. Finally, the Court notes that there is no audio track on the Pilot or Dashcam videos, but there is on the McHugh video.

On February 21, 2018, Baker was twenty-three years old. ECF No. 48 at 3. He and his friend, Gregory Dees ("Dees"), were driving through Texas on their way from California to Memphis, Tennessee. *Id*. While the officers were on patrol, they observed Baker's car driving suspiciously and decided to follow it. ECF No. 38 at 7. Baker and Dees stopped for gas at a Pilot gas station ("Pilot") in Stratford. *Id.* The Pilot video reflects that they pulled into the gas pumps at approximately time stamp 1:28, and they began getting out of the car at 1:37. At the same time, the officers pulled their police SUV past the car Baker was driving, parked at the Pilot, and ran a query through TCIC/NCIC on the car's license plate. ECF No. 38 at 7. The officers discovered that the car was reported stolen in California. *Id.* at 7-8. The officers also learned that the car was taken in a nonviolent way. ECF No. 52 at 99. Three men who were in the Pilot reported Baker and Dees to Coborn because they were concerned after Baker and Dees asked them "suspicious" questions regarding how to get to Memphis, Tennessee using backroads to avoid police

checkpoints. ECF No. 38 at 8. Coborn had entered the Pilot to observe Baker and Dees, and he later held the door for them when they exited the station. Pilot video, 13:32-:33; ECF No. 52 at 151.

After exiting the Pilot, Baker and Dees returned to the car. ECF No. 39-2 at 99-100; Pilot video 13:36-:47. Baker got into the driver's seat while Dees stayed outside to pump the gas. *Id*. at 100; Pilot video 13:45-:47. At that same time, the officers turned on their SUV's red and blue lights and pulled behind Baker's car. Pilot video, 13:50; Dashcam video, 0:33. Upon seeing the police vehicle, Dees dropped the gas pump nozzle, moved quickly to the car, and got into the passenger seat. *Id*. at 13:53; Dashcam video, 0:35. The officers exited their vehicle and began shouting commands to Baker and Dees. *Id.* The commands included "let me see your hands" and "roll the window down." McHugh video, 0:04. McHugh apparently drew his gun as he got out of the SUV, and Coborn drew his as he ran up to Baker's car. Pilot video, 13:51-:54. Coborn approached the driver's side window of the car, shouting commands, and struck the window with his firearm. *Id*. at 14:00; Dashcam video at 0:43. The car's side windows had dark tinting that obstructed the officers' views into the car, and Coborn then moved in front of the car to look inside while McHugh moved to the passenger side. ECF No. 39-1 at 70-74, 183-85.

The brake lights on the car turned on as Baker started the car, put it in drive, and began to pull away from the gas pump. Dashcam video, 0:45-0:48; Pilot video, 14:01-:04. At some point in this sequence, McHugh yelled, "you go forward …," the car moved, and the sound of gunshots rang out. McHugh video, 0:04-0:07. As a result of the incident, Baker was shot twice in the back and died at the scene. Dees was not injured.

The parties disagree whether the officers began firing their weapons before or after the car began to move. Plaintiffs assert that "Coborn opened fire *before* the car moved—sending

approximately eight bullets toward the car, right at Baker and Dees." ECF No. 53 at 11. In support of this assertion, Plaintiffs cite the Dashcam video, 0:47-0:49, and the McHugh video, 0:05. Based on the officers' deposition testimony, Defendants respond that the officers fired at the car only after it began moving. Coborn testified that he began firing "when [Baker] drove towards me, when he lunged towards me." ECF No. 39-1 at 76. McHugh testified that he "started shooting as soon as Mr. Dees was no longer in my line of fire since he was not a threat. So as soon as the 'B' pillar on the vehicle crossed my line of sight, and I could see where Mr. Baker was sitting, is where I start shooting." *Id.* at 186-87.

The parties likewise dispute what happened leading up to and during the shooting. Defendants contend that Coborn only began firing at Baker after he reached below the dashboard out of Coborn's view and turned the steering wheel of the car toward Coborn. ECF No. 38 at 9. Defendants stress that the officers feared that Baker was either going to shoot Coborn or run over him with the car. *Id.* Plaintiffs assert that the officers began firing their weapons before the car began to move and that the car never moved toward the officers. ECF No. 53 at 11. Instead, they argue Baker turned the steering wheel away from the officers, and the Pilot video showed that the car's wheels were turned sharply to the left as the car moved away from the pumps. *Id.* at 12.

It is uncontested that Coborn and McHugh fired their service weapons at the car numerous times. Dashcam video, 0:45-0:48; McHugh video, 0:04-0:07. Those weapons were 40-caliber Glock pistols with a 15-round magazine. ECF No. 39-1 at 21, 22, 163, 165. The report of the incident prepared by Texas Ranger Eustacio Galvan described the property collected in his investigation including the two Glock 22 RTF 40 caliber handguns the officers used. *Id.* at 39. As detailed in his report of the contents of the guns after the incident, one gun had one round in the chamber and an empty seated magazine, and the other had one round in the chamber and ten rounds

in the seated magazine. *Id.* The report also reflects that fifteen Winchester .40 caliber cartridge cases were identified at the scene. ECF No. 39-2 at 27-28. Coborn does not recall how many shots he fired. ECF No. 39-1 at 22-26. McHugh believes that he fired his weapon five times. *Id.* at 190. The McHugh video appears to have recorded eight shots as the car initially moved past the officers. McHugh video 0:04-0:08. McHugh testified that he believes that he fired the shot that ultimately killed Baker and that his shots entered the car's rear passenger window and the passenger side of the rear window. ECF No. 39-2 at 193-94. It is otherwise unclear from the evidence which officer fired the shot that killed Baker or the shots that struck the car's rear passenger window and rear window.

There is summary judgment evidence to support Plaintiffs' claims that Baker was hit by shots that were fired after the car passed by the officers. The post-mortem examination of Baker revealed that he was shot twice in the back. *Id.* at 43-44. The first bullet entered his upper back and lodged near the top of his left arm. *Id.* at 44. The path of this bullet was from the back to the front of Baker's body and from the right to the left. *Id.* The second and fatal bullet entered Baker's upper back and exited on the front left side of his chest. Its path was from the back to the front and from right to left and upward. *Id.* Nizam Peerwani, M.D., longtime Tarrant County medical examiner and Plaintiff's forensic expert, stated in his report that Baker was shot either from his right side while he sat facing forward or from the rear as he was turned to the right toward the passenger side of the car. *Id.* at 195.

Additionally, Coburn agreed that he continued to shoot at the car after it had passed by him. ECF No. 39-1 at 84. McHugh testified that he stopped shooting at the car after it had passed him, and he no longer had a safe shot at the vehicle. Id. at 189. Photographs of the car show bullet holes on the passenger side, rear passenger side window, passenger side rear window, spoiler, and

trunk lid. ECF No. 52 at 194-95. Ranger Galvan's report reflected bullet damage to the exterior of the car in numerous places, including defects in the middle center trunk lid with a rear to front trajectory, upper right area of the trunk lid with a right to left and slightly upward trajectory, and the middle right area of the rear windshield. ECF No. 39-2 at 30. The report also detailed damage to the interior rear center seat console. *Id.* at 31.

Ranger Galvan's report also described bullet holes that were consistent with shots fired at the car from Coborn's position in front of the vehicle as well as from McHugh's position on the passenger side. These included bullet damage to the left front quarter panel center, front grill, right hood, right quarter panel area, and right side of the car. *See id.* at 30-31. The report also reflected damage to the interior of the right front passenger door. *Id.* at 31.

In their Second Amended Complaint, the Plaintiffs sued under 42 U.S.C. § 1983, claiming that the officers used excessive force in violation of Baker's Fourth Amendment rights and that the City failed to properly train the officers, which resulted in Baker's unlawful shooting. *See* ECF No. 48. Defendants now move for summary judgment. *See* ECF No. 37. The motion has been fully briefed and is ripe for determination.

## II.    LEGAL STANDARD

### A.    Summary Judgment

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper when the pleadings and evidence illustrate that no genuine issue exists as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Slaughter v. Southern Talc Co.*, 949 F.2d 167, 170 (5th Cir. 1991). Disputes concerning material facts are genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). An issue is "material" if it involves a fact that

might affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248; *Burgos v. Sw. Bell Tel. Co.*, 20 F.3d 633, 635 (5th Cir. 1994). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-25 (1986)).

When a movant carries his initial burden, the burden then shifts to the nonmovant to show that the entry of summary judgment is inappropriate. *Celotex*, 477 U.S. at 322-24; *Duckett v. City of Cedar Park, Tex.*, 950 F.2d 272, 276 (5th Cir. 1992). Although the nonmovant may satisfy this burden by tendering depositions, affidavits, and other competent evidence, "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden," *Douglass*, 79 F.3d at 1429, as "the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Merely colorable evidence or evidence not significantly probative, however, will not defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 249-50. Furthermore, a mere scintilla of evidence will not defeat a motion for summary judgment. *Anderson*, 477 U.S. at 252; *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994).

Summary judgment evidence is viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993). The Court draws all reasonable factual inferences in favor of the non-movant. *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985). In addition, factual controversies are resolved in favor of the nonmovant, but only when both parties have submitted evidence of contradictory facts, thus creating an actual controversy. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). In the absence of any

proof, however, the Court does not assume that the nonmovant could or would prove the necessary facts. *Id.*

In making its determination on the motion, the Court looks at the full record including the pleadings, depositions, answers to interrogatories, admissions, and affidavits. Fed. R. Civ. P. 56(c); *Williams v. Adams*, 836 F.2d 958, 961 (5th Cir. 1988). However, the Court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. The movant's motion for summary judgment will be granted only if he meets his burden and the nonmovant fails to make the requisite showing that a genuine issue exists as to any material fact. Fed. R. Civ. P. 56(e)(2).

### B.    Qualified Immunity

"Qualified immunity shields government officials performing discretionary functions from liability unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Gibson v. Rich*, 44 F.3d 274, 277 (5th Cir. 1995) (citations omitted). To overcome the defense of qualified immunity, a plaintiff must show "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (citations omitted). "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' [such] that every 'reasonable official would have understood that what he is doing violates that right.'" *Id.* at 731 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The Court may decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

"A qualified immunity defense alters the usual summary judgment burden of proof." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). "Once an official pleads the defense, the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." *Id.* The evidence still is viewed in the light most favorable to the plaintiff. *See Freeman v. Gore*, 483 F.3d 404, 410-11 (5th Cir. 2007).

## III.     ANALYSIS

### A.     Claim against the Officers

Plaintiffs sue the officers for violating Baker's Fourth Amendment right to be free from excessive force pursuant to 42 U.S.C. § 1983. ECF No. 48 at 7-8. The officers assert the defense of qualified immunity. ECF No. 38 at 15. "An officer's use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment." *Hatcher v. Bement*, 676 F. App'x 238, 242 (5th Cir. 2017) (citation and quotation marks omitted). A plaintiff claiming that a police officer used excessive force must show "(1) an injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Ontiveros v. City of Rosenberg*, 564 F.3d 379, 382 (5th Cir. 2009) (citations omitted). "An officer's use of deadly force is presumptively reasonable when the officer has reason to believe that the suspect poses a threat of serious harm to the officer or to others." *Id.* (citations omitted).

A court determines the reasonableness of an officer's exercise of deadly force "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396-97 (1989). To do so "requires careful attention to the facts and circumstances of each particular case, including (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3)

whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. "Excessive force claims are [thus] necessarily fact-intensive . . . [and depend] on the facts and circumstances of each particular case." *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) (per curiam) (citations and quotation marks omitted).

### 1.    *Constitutional Violation*

Relying on the Dashcam, Pilot, and McHugh videos, Plaintiffs argue that Coborn began firing his weapon at the car Baker was driving before it ever began to move. ECF No. 53 at 10-11. Additionally, Plaintiffs cite the deposition testimony of McHugh and Dees that as Coborn was firing his weapon at the car, Baker ducked down to the right as if he were "trying to get out of the line of fire." *Id.* at 11. The officers agreed that after that moment, Baker did not reach down below the dash again during the incident. *Id.* Plaintiffs also point to the Pilot video and argue that as the car began to move forward, Baker steered the wheels of the car to his left, contrary to Coborn's report that the car "lunged" forward a couple of feet before turning to the left. *Id.* at 12-13. Additionally, the Plaintiffs note that Coborn did not have to take evasive action to avoid being hit by the car as the Dashcam video and the Pilot video footage showed that he remained stationary as the car drove away. *Id.* at 13.

Defendants argue in response that the officers' decision to shoot Baker was objectively reasonable because Baker posed an immediate, serious threat to the officers. ECF No. 38 at 10-11. They claim that Baker failed to follow the officers' verbal commands to show them his hands, and instead he reached down below the dash as if to retrieve a weapon and drove the car toward Coborn. *Id.* at 11. Defendants argue that a reasonable officer could have feared for his life or the life of his partner in such a situation and that neither of the officers was required to wait until either of them was fired upon or hit by the car before firing his weapon at Baker. *Id.* Defendants also contend that

the officers' decision to shoot was not an unreasonable or excessive use of deadly force because there is no evidence that Baker did not reach below his dash in an apparent attempt to retrieve a gun. *Id.* Further, the Defendants argue that there is clear evidence that Baker put the car in drive regardless of the officers' commands, and their reaction to shoot at Baker was not an unreasonable or excessive use of deadly force. *Id.*

Defendants rely upon *Salazar-Limon* and *Reese* in support of their arguments for summary judgment on the issue of a violation of Baker's constitutional rights. *Salazar-Limon v. City of Hous.*, 826 F.3d 272 (5th Cir. 2016); and *Reese v. Anderson*, 926 F.2d 494 (5th Cir. 1991). In *Salazar-Limon*, however, the plaintiff did not offer any evidence to contradict the officer's testimony that the plaintiff reached for his waistband while attempting to flee the scene. 826 F.3d at 275. Here, Baker did attempt to flee the scene, and the officers assert that they fired their weapons because he reached below the dash for a weapon and attempted to use the car as a weapon. However, unlike the plaintiff in *Salazar-Limon*, Plaintiffs here have offered controverting evidence that Baker did not reach for a weapon, but instead was trying to get out of the line of fire. Additionally, Plaintiffs have presented video evidence that, contrary to Coborn's position, the car never moved forward and was at all times turned to the left immediately before the officers began shooting.

After a high-speed chase following a reported robbery, the plaintiff's son in *Reese* was shot and killed after repeatedly reaching down below the officer's sight line in defiance of the officer's orders to raise his hands. 926 F.2d at 495-96. The Defendants argue that Baker reached below the dash, presumptively reaching for a weapon, but Plaintiffs dispute that fact. Plaintiffs have produced evidence that Baker did not reach below the dash, but instead was ducking out of the line of fire. Additionally, Defendants argue that Baker used his car as a weapon by driving toward

11

Coborn. Plaintiffs again have produced evidence that Baker had his car wheels turned to the left before putting the car in drive and that Coborn began firing his weapon before the car moved.

After closely reviewing the videos of the incident and examining the summary judgment evidence, the undersigned concludes that there is a genuine issue of material fact on the issue of whether the officers violated Baker's Fourth Amendment right to be free from excessive force. Plaintiffs have offered evidence that, if credited by the jury, contradicts the officers' claims that they fired at the car only so long as there was a threat of imminent danger to one or both of them. Although Plaintiffs' version of the events may not prevail ultimately, the undersigned cannot conclude on this factually disputed record that the officers are entitled to qualified immunity on the issue of violation of Baker's Fourth Amendment rights as a matter of law.

The video evidence supports this conclusion since it appears to show McHugh continuing to fire his weapon at the car after it had moved passed Coborn to his right and continued to move out of the Pilot lot toward the highway. Coborn's actions in running after the car and continuing to fire his gun until the car entered U.S. Highway 54 adjacent to the Pilot parking lot also support this view. The presence of bullet holes in the rear window, the trunk lid, rear of the trunk area, and rear seat center console provides additional competent summary judgment evidence that one or both of the officers fired at the car after it passed by both officers and no longer posed a threat to either of them or to another person. Viewing the evidence in the light most favorable to the Plaintiffs, as the Court must at this point, a jury could find that the officers continued to shoot at the car after either officer was in imminent threat of harm.

As the Fifth Circuit has held, police officers may be justified in exercising deadly force at one point in an incident, but not at another point after the immediate threat of serious injury passes. "[A]n exercise of force that is reasonable at one moment can become unreasonable in the next if

the justification for the use of force has ceased." *Mason v. Lafayette City-Par. Consol. Gov't*, 806 F.3d 268, 277 (5th Cir. 2015) (citing *Lytle v. Bexar Cty., Tex.*, 560 F.3d 404, 413 (5th Cir. 2009)). Here, there are genuine issues of material facts as to the officers' use of deadly force after the car passed to Coborn's side and no longer posed a threat to the officers or to others. *See Roque v. Harvel*, No. 1:17-cv-932-LY, 2020 WL 6334800 (W.D. Tex. Mar. 23, 2020) (summary judgment proper for first shot fired, but officer not entitled to qualified immunity for shots fired after person dropped weapon). Thus, even if the officers were justified in firing their weapons when the car moved initially, a reasonable jury could conclude that there was no justification for continuing to fire at the car as it moved away from the officers. This is especially so here where the evidence is unclear on which officer fired the shot that killed Baker and is clear that the officers fired at the rear of the car as demonstrated by the bullet holes in the trunk lid, spoiler, and rear window.

On these facts, Plaintiffs have adequately identified a genuine dispute of material fact on whether the officers violated Baker's rights. This dispute is material because it would not have been reasonable for the officers to shoot Baker if he did not pose a sufficient threat to the officers. *See generally Cole v. Carson*, 935 F.3d 444 (5th Cir. 2019) (affirming district court's denial of summary judgment on excessive force claim upon finding genuine disputes of fact regarding officers' entitlement to qualified immunity); *Lytle*, 560 F.3d at 417 (unreasonable for police officer to use deadly force against person who did not pose sufficient threat of harm to the officer or others). Although the officers state that they were concerned for Coborn's safety throughout their encounter with the car Baker was driving, a jury could conclude from the Pilot and Dashcam videos that the car's wheels were turned to the left when it began to move forward and that this movement was not threatening to either of the officers. Likewise, the bullet holes in the rear window, spoiler, trunk lid, and rear seat center console apparent from the videos and photographs in evidence and

the number of bullets that Coborn apparently fired at the car as it was moving away from the officers could lead a reasonable jury to conclude that the officers violated Baker's rights.

As a result, there is a genuine issue of material fact on the issue of violation of Baker's constitutional rights. At this stage of the proceeding, the Court should not find as a matter of law that the officers did not violate Baker's constitutional rights. Because a jury could conclude that no reasonable officer in the same or similar circumstance would have continued to fire his weapon at the car Baker was driving after it was moving away from the officers, a fact issue exists on this point. Viewed in the light most favorable to Plaintiffs, as the Court must do at this juncture, the evidence raises genuine issues of material fact regarding Baker's actions and the reasonableness of the officers' conduct during the incident.

### 2. *Clearly Established Law*

Having found that a jury could reasonably conclude that the officers' use of deadly force was a constitutional violation, the undersigned considers whether the constitutional right that the officers allegedly violated was clearly established at the time of the incident. As Judge Kacsmaryk has phrased this second prong of the qualified immunity inquiry, the Court must determine whether any reasonable officer would have acted as Coborn and McHugh did in the incident at issue. *See Pickett v. City of Perryton*, No. 2:18-cv-75-Z-BP, 2020 WL 562672, at * 5 (N.D. Tex. Feb. 4, 2020).

This inquiry considers the "objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Pearson*, 555 U.S. at 244 (quoting *Wilson v. Layne*, 526 U.S. 603, 614 (1999)) (internal quotation marks omitted). A right is clearly established when its contours are sufficiently clear that a reasonable official would have understood that what he was doing violated the right in issue. *See Anderson v. Creighton*, 483 U.S.

635, 640 (1987). This requirement does not mean that there must be a prior case with identical facts. "The central concept is that of fair warning: The law can be clearly established despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights." *Kinney v. Weaver*, 367 F.2d 337, 350 (5th Cir. 2004) (en banc) (quoting *Hope v. Pelzer*, 536 U.S. 730, 740 (2002)) (internal quotation marks omitted). Further, the law should be clear in a more particularized rather than abstract sense such that it is apparent that the official's actions are unlawful based upon pre-existing law. *Anderson*, 483 U.S. at 640.

At the time of Baker's shooting, it was clearly established under Fifth Circuit precedent that law enforcement officers may not use deadly force against a person who was fleeing from the officer and did not pose a sufficient threat of harm or immediate danger to the officer or to others. In *Lytle*, the court dismissed an interlocutory appeal of the denial of defendants' motion for summary judgment on qualified immunity grounds in a case where a law enforcement officer fired at the rear of a car and killed an occupant. 560 F.3d 404 (5th Cir. 2009). In reaching its decision, the court found numerous fact issues existed regarding the reasonableness of the defendant's actions. The court observed that "a suspect that is fleeing in a motor vehicle is not so inherently dangerous that an officer's use of deadly force is *per se* reasonable. In assessing the reasonableness of a police officer's use of force, we must instead delve into the facts and circumstances of each case." *Id.* at 416. On the issue of whether the law was clearly established on this point, the Fifth Circuit held, "[i]t has long been clearly established that, absent any other justification for the use of force, it is unreasonable for a police officer to use deadly force against a fleeing felon who does not pose a sufficient threat of harm to the officer or others. [Citation omitted]." *Id.* at 417. The

court continued that "[t]his holds as both a general matter, [citation omitted], and in the more specific context of shooting a suspect fleeing in a motor vehicle [citation omitted]." *Id.* at 417-18.

Similarly, in *Flores v. City of Palacios,* the court affirmed denial of a police officer's motion for summary judgment on qualified immunity grounds in an excessive force case involving a motor vehicle that was driven away from the officer. 381 F.3d at 391 (5th Cir. 2004). In *Flores*, the officer shot at the plaintiff's car to prevent her escape and arrested her when she stopped the car. *Id.* at 393. In affirming the trial court's denial of the officer's summary judgment motion on this ground, the court noted that the officer's position behind the plaintiff's car at the time of the shooting was an important fact that would indicate that she did not pose any danger to him or others when the officer fired at her. *Id.* at 399.

Defendants argue in response that the law regarding firing on a vehicle that was driving away from law enforcement was not clearly established on the date of the incident. ECF No. 38. In support of this position, they cite authority for the proposition the officers were justified in firing at Baker's car because it was moving toward them. *Marlbrough v. Stelly*, 814 F. App'x 798 (5th Cir. 2020). As noted above, however, there are disputed issues of material fact on whether the car ever "lunged" or moved toward Coborn and on whether the officers were justified in continuing to shoot at the car even after it move past them. Unlike the situation in *Marlbrough*, there is a relevant fact issue here on whether the officers continued to be justified in firing at Baker's car even after it had passed by both of them.

Likewise, the particular facts here distinguish it from the factual situations in the Supreme Court cases of *Plumhoff v. Rickard*, 572 U.S. 765 (2014), and *Mullenix v. Luna*, 577 U.S. 7 (2015). Both of those cases involved high-speed car chases with suspects who had seriously endangered public safety before law enforcement officers shot them. Here, the evidence shows that Baker was

16

attempting to flee the scene of an arrest, but he and Dees had not acted in a dangerous manner or threatened public safety prior to the incident. According to the Pilot video, the car Baker was driving had been parked beside the gas pump for over twelve minutes while Baker and Dees were inside the Pilot station before the officers pulled behind them in the SUV. Pilot video, 1:31-13:50. During this time, the officers drove past the car, observed Baker and Dees in the Pilot station, and spoke with the persons inside whom Baker and Dees had approached about the best way to get to Memphis, Tennessee without encountering law enforcement officers. Additionally, Coborn had held the door for Baker and Dees when they went back outside to pump gas.

The law in the Fifth Circuit was clearly established as of February 21, 2018 that it was a constitutional violation to shoot a person who was fleeing the scene in a motor vehicle, where the driver posed no immediate threat to the officers or others. *See Lytle,* 560 F.3d 404. The law also was clear then that officers who were justified in exercising deadly force in the beginning of an encounter would not be justified in continuing to exercise deadly force after the immediate threat of harm had passed. *Mason*, 806 F.3d at 268. Although the officers may have been justified in shooting at Baker when he started his car and the car moved forward as Baker steered it to his left, the Court concludes that no reasonable law enforcement officer would continue to shoot into the center of the trunk of the car, in the rear window, and in the center console of the middle of the back seat as Baker was driving away from him. On the particular facts of this case, the undersigned determines that Coborn and McHugh are not entitled to qualified immunity at the summary judgment stage.

### B.    Claims against the City of Stratford

Plaintiffs contend that the City is liable under § 1983 because it failed to adequately train its employees, which led to the officers' use of excessive force against Baker. ECF No. 48 at 8-9.

17

They also claim that the City actively instituted practices, policies, and customs, which led to the officers' use of excessive force against Baker. *Id.* In their Motion for Summary Judgment, Defendants argue that Plaintiffs do not present evidence sufficient to establish the existence of each element of their claims. ECF No. 38 at 18-19.

Analysis of Plaintiffs' claims against the City begins with the general proposition that a municipality may not be held liable for the acts or omissions of its actors under 42 U.S.C. § 1983 merely based on *respondeat superior*. *See Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 694 (1978)). Instead, a municipality only may be liable for its unconstitutional policies or customs. *Monell*, 436 U.S. at 691. To establish municipal liability, a plaintiff must prove: (1) an official policy or custom, of which (2) a policymaker had actual or constructive knowledge, and (3) a constitutional violation whose moving force is that policy or custom. *Pineda v. City of Hous.*, 291 F.3d 325, 328 (5th Cir. 2002) (citing *Piotrowski*, 237 F.3d at 578).

### 1.    *Failure to Adequately Train Officers*

In support of their claim that the City failed to adequately train its employees, Plaintiffs argue that the summary judgment evidence show the Stratford Police Department followed a pattern of its officers exercising unlawful force by shooting at moving vehicles, and the City did not provide training regarding shooting at moving vehicles. ECF No. 53 at 37. Defendants argue to the contrary that the evidence shows that the officers had extensive training in this area. ECF No. 38 at 18.

### a.    **Official Policy or Custom**

To hold a municipality liable under § 1983, a plaintiff must first demonstrate the existence of an official policy or custom. *Piotrowski*, 237 F.3d at 579. "Official policy can arise in various

forms. It usually exists in the form of written policy statements, ordinances, or regulations, but also may arise in the form of a widespread practice that is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *James v. Harris Cnty.*, 577 F.3d 612, 617 (5th Cir. 2009) (quoting *Piotrowski*, 237 F.3d at 579). Although a "single decision by a policy maker may, under certain circumstances, constitute a policy for which a municipality may be liable[,] ... this 'single incident exception' is extremely narrow and gives rise to municipal liability only if the municipal actor is the final policymaker." *Valle v. City of Hous.*, 613 F.3d 536, 541-42 (5th Cir. 2010) (citations, brackets, and some internal quotation marks omitted).

Plaintiffs have not identified any evidence raising an inference that the City's Police Department had policies or customs of failing to adequately train. The Fifth Circuit has held that "when officers have received training required by Texas law, the plaintiff must show that the legal minimum of training was inadequate." *Sanders-Burns v. City of Plano*, 594 F.3d 366, 381-82 (5th Cir. 2010). Plaintiffs have not shown that the Stratford Police Department's training requirement fell below the state-mandated level of training for officers on the appropriate use of deadly force, nor have they identified summary judgment evidence that responds to the City's argument that its police officers received adequate training in using their weapons. Notwithstanding Plaintiffs' argument that the problem lies not in the City's failure to require training on the issue of how, but when, to use deadly force when dealing with a motor vehicle, Defendants have shown that the training the officers received satisfied state requirements, which is a factor that counsels against a finding that the City failed to train the officers adequately. *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 171 (5th Cir. 2010).

Plaintiffs have offered evidence of three other incidents occurring in 2018 in which Stratford police officers fired their weapons at fleeing evidence. ECF No. 53 at 38. However, this

evidence does not establish a pattern that would have put the City on notice of a need for further training because there is no evidence to support the contention that these incidents involved illegal shootings or were similar to the facts at issue here. Although Plaintiffs insist that the small absolute number of allegedly similar incidents is enough to establish a pattern in a department as small as the Stratford Police Department, the Fifth Circuit has required more evidence of similar incidents to establish a pattern. As United States District Judge Brantley Starr wrote recently, "[s]ix incidents of excessive force within a five-year period is not sufficient under Fifth Circuit precedent to constitute a pattern 'so common and well-settled as to constitute a custom that fairly represents municipal policy' and does not 'warrant the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees.'" *Dawes v. City of Dallas*, No. 3:17-cv-01424-X, 2020 WL 3603090, at *5 (N.D. Tex. July 2, 2020) (citing *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 850 (5th Cir. 2009) & *Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir. 1984) (quotation marks omitted)). Nor have the Plaintiffs shown why a need for different training procedures should have been obvious to the City at the relevant time. Therefore, the undersigned concludes that Plaintiffs have failed to satisfy the first prong necessary for a finding of municipal liability on their claim the City failed to train the officers properly.

### b. Policymaker with Actual or Constructive Knowledge

To establish a claim for municipal liability, a plaintiff also must show that "[a]ctual or constructive knowledge of [a] custom must be attributable to the governing body of the municipality or to an official to whom that body has delegated policy-making authority." *Piotrowski*, 237 F.3d at 579 (internal quotation marks and citation omitted).

Here, Plaintiffs contend that because the City's police department is so small, its previous chief, Chief Hooks, was intimately aware and involved with the training the officers received. ECF

No. 53 at 42. However, rather than offering evidence that Chief Hooks had actual or constructive knowledge of the allegedly inadequate policies or customs, Plaintiffs claim without support that he "knew officers would be confronted with situations where they believed shooting at moving vehicles was an option," and this was an obvious failure to train the officers. *Id.* at 42-43. Because their complaint only speculates that Chief Hooks knew about, or had final authority to set, the alleged policy or custom at issue, Plaintiffs have not raised a material fact issue whether Chief Hooks was the official policymaker with final decision-making authority over policies or customs involving adequate training.

### c. Constitutional Violation Whose "Moving Force" is that Policy or Custom

Finally, a plaintiff must establish that the alleged policies or customs were the "moving force" behind the asserted constitutional violations in order to recover under § 1983. Thus, there must be a "direct causal link" between the policy or custom and the violation. *Piotrowski*, 237 F.3d at 580 (citing *Monell*, 436 U.S. at 694). Further, a plaintiff "must show that the municipal action was taken with the requisite degree of culpability." *Valle*, 613 F.3d at 542. Specifically, a plaintiff "must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences. A showing of simple or even heightened negligence will not suffice." *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 407 (1997).

Here, Plaintiffs have failed to present summary judgment evidence of a policy or custom relating to failure to train the officers on when to shoot at a moving vehicle. Moreover, both of the officers testified that they were aware that it was not permissible for officers to exercise deadly force against a suspect who was fleeing from them and did not pose an immediate risk to them or other people. *See* ECF No. 39-1 at 43 (Officer Coborn) and 198-204 (Officer McHugh). Consequently, Plaintiff have not raised a genuine issue of material fact as to whether any policy

21

or custom of the City caused the violation of Baker's constitutional rights. And they have not shown that any policy or failure to train the officers was the driving force behind any violation of Baker's constitutional rights since the officers knew they should not fire their weapons at a suspect who was running away from them and did not pose a risk to themselves or others at the time they exercised deadly force against Baker. Because the Plaintiffs have not met their burden of raising a fact issue on whether (1) an official policy or custom, of which (2) a policymaker had actual or constructive knowledge, and (3) a constitutional violation whose moving force is that policy or custom, the City is entitled to summary judgment on the Plaintiffs' claims against it.

## IV.    CONCLUSION

For the foregoing reasons, the undersigned **RECOMMENDS** that Judge Kacsmaryk **GRANT** in part and **DENY** in part Defendants' Motion for Summary Judgment. ECF No. 37. He should **DENY** Defendants' Motion as it relates to Plaintiffs' claims against the officers and **GRANT** it on their claims against the City of Stratford.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)(1). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district

court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d

1415, 1417 (5th Cir. 1996) (en banc).

     **SIGNED** on December 21, 2020.

                                     Hal R. Ray, Jr.

                                       UNITED STATES MAGISTRATE JUDGE