

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| BAKER, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | 2:19-CV-077-Z |
| | § | |
| COBORN, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION
## AND ORDER

Before the Court are Defendants' (1) Motions for Summary Judgment (ECF No. 37) and to Exclude Plaintiffs' Expert Noble (ECF No. 44), (2) the Magistrate Judge's findings, conclusions, and recommendations on those motions (ECF Nos. 65, 66), and (3) all related pleadings. The Magistrate Judge recommends that Defendants' Motion for Summary Judgment be granted in part and denied in part. Defendants timely filed objections (ECF No. 68). After all responses had been filed, the Court ordered additional briefing (ECF No. 72). After said briefing was completed, the motions became ripe for determination.

After making an independent review of the pleadings, files, and records in this case, the Court concludes that the findings and conclusions are correct in part. It is therefore ORDERED that the findings, conclusions, and recommendation of the Magistrate Judge are ADOPTED IN PART and that Defendants' motion for summary judgment (ECF No. 37) is GRANTED IN ITS ENTIRETY. Because the granting of summary judgment fully disposes of this case, Defendants' Motion to Exclude Testimony (ECF No. 44) is DENIED as moot.

## BACKGROUND

This case concerns Darion Baker ("Baker") — a man who was shot and killed by a police officer while fleeing in a stolen car from an attempted arrest. Ira Baker, individually and as administratrix of the Baker's Estate; Mario Baker; and Arlandra Williford, as next friend of Baker's minor child, C.W., (collectively "Plaintiffs"), brought this suit against Officer Richard Keith Coborn ("Coborn"), Officer Michael Joseph McHugh ("McHugh") (collectively "the officers"), and the City of Stratford, Texas ("the City").

Plaintiffs assert a cause of action under 42 U.S.C. § 1983 against Officers Coborn and McHugh for violating Baker's Fourth Amendment right to be free of excessive force. Against the City, Plaintiffs assert a cause of action under Section 1983 under the well-known *Monell* theory of liability. Defendants now move for summary judgment.

## LEGAL STANDARDS

In a civil case, "[a] party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought." FED. R. CIV. PROC. 56(b). When a summary judgment movant does not have the burden of proof on a claim, it may obtain summary judgment by pointing the Court to the absence of evidence on any essential element of the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once it does so, the nonmovant must go beyond its pleadings and designate specific facts demonstrating that there is a genuine issue of material fact for trial. *Id.* at 324–25; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). A genuine issue of material fact exists if the evidence is such that a reasonable trier of fact could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is mandatory where the nonmovant fails to meet this burden. *Little*, 37 F.3d at 1076.

To meet this burden, the nonmovant must show more than "some metaphysical doubt as to the material facts"—and may not rely on "conclusory allegations," "unsubstantiated assertions," or "only a scintilla of evidence." *Id.* at 1075 (internal marks omitted). However, summary judgment evidence is to be viewed in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1994).

"A qualified immunity defense alters the usual summary judgment burden of proof." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (citing *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005)). Specifically, when qualified immunity has been raised, "the moving party is not required to meet its summary judgment burden for a claim of immunity." *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007) (internal marks omitted) (citing *Cousin v. Small*, 325 F.3d 627, 637 (5th Cir. 2003)). Instead, "it is sufficient that the movant in good faith pleads that it is entitled to qualified immunity. Once the movant asserts this affirmative defense, the burden shifts to the plaintiff to rebut it." *Id.* (internal marks and emphasis omitted); *Gates v. Tex. Dep't of Protective & Regul. Servs.*, 537 F.3d 404, 419 (5th Cir. 2008) (noting that when a government official pleads qualified immunity, the plaintiff must "rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct.").

Even when considering a qualified immunity defense, however, the Court must view the evidence in the light most favorable to the nonmovant and draw all inferences in the nonmovant's favor. *Rosado v. Deters*, 5 F.3d 119, 122–23 (5th Cir. 1993).

EVIDENCE

Viewed in the light most favorable to the nonmovant Plaintiffs, the summary judgment evidence is as follows:

Baker and Gregory Dees ("Dees") traveled by airplane to Los Angeles, California from their home in Memphis, Tennessee. ECF No. 48 at 3. While in Los Angeles, Baker and Dees spent all their money—including the money required to return home to Memphis. *Id.* At this juncture, the duo decided to steal an Infiniti sedan that was parked — unoccupied, engine running — at a Walgreens pharmacy. ECF No. 38 at 7. Shortly thereafter, Baker and Dees started driving east.

On February 21, 2018, Baker and Dees were driving the stolen vehicle east on Interstate I-40 when they decided to stop in the small town of Stratford, Texas. *Id.* Around 7:00pm, Officers McHugh and Coborn observed the stolen vehicle driving "suspiciously" and decided to follow it. *Id.* Shortly thereafter, the stolen vehicle pulled into a Pilot Travel Center near Highway 54, which featured external fuel pumps and an adjacent convenience store. *Id.* Baker and Dees parked the stolen vehicle alongside the fuel pumps, exited the vehicle, then entered the convenience store. *Id.*

With Baker and Dees inside the convenience store, Officers McHugh and Coborn drove the police SUV alongside the parked stolen vehicle, recorded its license plate, and relayed all identifying information to police dispatch. ECF No. 52 at 98–99. The dispatcher reported back to Officers McHugh and Coborn that the Infiniti sedan was recently stolen in a "nonviolent theft." *Id.* at 99. The officers parked the police SUV near the convenience store. *Id.* Officer Coborn exited the police SUV and entered the convenience store. Pilot Video at 12:10–16. Open entry, three customers approached Officer Coborn and reported that Baker and Dees were asking "suspicious" questions about the byways and backroads to Memphis, seeking a route that would evade law enforcement "checkpoints." ECF No. 38 at 8.

Baker, Dees, and Officer Coborn exited the Pilot convenience store at the same time — with Officer Coborn holding the door for the other two. Pilot Video at 13:32. Baker returned to the driver's seat of the stolen vehicle while Dees began to pump gas. *Id.* at 13:48. At the same time, Officer Coborn climbed back into the police SUV. *Id.* Next, the officers drove the police SUV into a parked position directly *behind* the stolen vehicle and activated their red and blue police lights. Dashcam Video at 0:20–33.

Upon seeing the police SUV, Dees immediately dropped the gas pump and climbed into the passenger seat of the stolen vehicle. *Id.* at 0:35–36. Simultaneously, the two officers exited the police SUV and approached the stolen vehicle. *Id.* Officer Coborn, wearing brown, ran to the driver-side door — *i.e.*, the left side of the video recording. *Id.* at 0:35–39. Officer McHugh, wearing black, ran to the passenger-side door — *i.e.*, the right side of the video recording, between the stolen vehicle and the fuel pump. *Id.* Officer Coborn drew his firearm as he approached the stolen vehicle. Pilot Video at 13:51–54. Officer McHugh apparently drew his firearm as he exited the SUV. *Id.*

The two officers shouted commands to Baker and Dees. *Id.* The commands included "let me see your hands!" and, "roll the window down!" McHugh Video at 0:04. The stolen vehicle's side windows were darkly tinted, obstructing the officers' view into the vehicle. ECF No. 39–1 at 70–74, 183–85.

Officer Coborn approached the driver-side window of the car, shouting commands, and striking the window with his firearm. *Id.* at 14:00; Dashcam Video at 0:43. Unable to break the driver-side window, Officer Coborn moved in front of the stolen vehicle, standing at the midpoint of the vehicle's front bumper. Dashcam video at 0:45–46. Simultaneously, the stolen vehicle's brake lights illuminated, indicating that the driver had activated the ignition and engine. *Id.*

Standing on the passenger side of the vehicle, Officer McHugh yelled, "you go forward…" but was immediately interrupted when Officer Coborn discharged his firearm into the windshield. McHugh Video at 0:05. From his position at the midpoint of the stolen vehicle's front bumper, Officer Coborn fired into the windshield approximately eight times before the car moved. Dashcam Video at 0:47–48.[1] In response, Baker turned the wheels of the stolen vehicle hard to the left and accelerated. *Id.* at 0:48. The stolen vehicle accelerated *past* Officer Coborn, who continued to fire. *Id.*

Seconds later, Officer McHugh discharged his firearm — but only after the stolen vehicle accelerated forward and to the left. *Id.* at 0:49–50. Officer McHugh later testified that he delayed firing for two reasons: (1) to avoid shooting through the passenger-side window, and (2) to avoid shooting Dees in the passenger-side seat. ECF No. 39–1 at 186–87. Instead, Officer McHugh paused until he could view and fire through the *rear* passenger-side window. ECF No. 39–1 at 186–87. Officer McHugh also testified that he thought he was the one who fired the fatal shot that ultimately killed Baker. ECF No. 39–2 at 193–94.

After the stolen vehicle had fully and completely passed them, Officer McHugh and Officer Coborn ceased firing. Dashcam video at 0:50. Approximately three seconds elapsed between the first shot fired and the last shot fired. *Id.* at 0:47–50.

Two shots hit Baker. One travelled through soft tissue in his left shoulder, from back to front, right to left, stopping in the upper bone in his left arm. ECF No. 52 at 177–78. This shot was non-fatal. The second, fatal shot, travelled through the middle of Baker's back, entering just to the right of his spine, breaking two ribs and collapsing his left lung, then breaking another rib before

---

[1] The Magistrate Judge determined there was a fact question on whether Officer Coborn fired *before* the vehicle moved, noting the lack of audio evidence. ECF No. 65 at 2. But contrary to the Magistrate Judge's FCR, the Dashcam Video *does* have audio. *Id.* The audio confirms that Officer Coborn fired several shots into the windshield *before* the stolen vehicle began to move — just as Plaintiffs argued.

exiting the left side of his chest, moving at a slight upward trajectory. *Id.* at 175, 178–79. The second shot — which collapsed his left lung — caused Baker to enter cardiorespiratory arrest and die. *Id.* at 329. Plaintiffs' medical examiner "stated in his report that Baker was [fatally] shot either from his right side while he sat facing forward or from the rear as he was turned to the right toward the passenger side of the car." ECF No. 65 at 5.

After being shot, Baker lost control of the stolen vehicle, which drifted across the Pilot parking lot, into the adjacent road, and into an empty Toot'n Totum parking lot — colliding with a barrier at low speed, coming to a stop. *Id.* Dees was subsequently arrested without incident. Dashcam Video at 1:58–2:10. Baker died from the gunshot wounds before paramedics arrived. McHugh Video at 2:10–3:15.

### ARGUMENTS

The parties view the same video recordings, but reach different conclusions. Defendants argue that Officer Coborn fired *after* Baker reached below the dashboard — out of Officer Coborn's view — and turned the steering wheel of the car toward Officer Coborn. ECF No. 38 at 9. Defendants testified they heard Baker shift the stolen vehicle into drive, which is further evidenced by the illumination of the brake lights. ECF No. 39–1, App. 244; Dashcam Video at 0:46–48. Defendants aver that they feared Baker was reaching below the dashboard to (1) retrieve a firearm to shoot Officer Coborn or (2) ram Officer Coborn with the stolen vehicle. *Id.*

Plaintiffs aver that Baker reached below the dashboard *after* Officer Coborn fired to avoid the bullets, citing Dees' deposition. ECF No. 52 at 169. While below the dashboard, Baker shifted the stolen vehicle into drive and turned the steering wheel to *avoid* Officer Coborn — not to strike him. *Id.* at 153, 159, 166, 169. After passing Officer Coborn, Baker sat up before being shot from behind by either Officer Coborn or Officer McHugh. *Id* at 169.

ANALYSIS

A. **Qualified Immunity**

Under 42 U.S.C. § 1983, private citizens may sue public officials in federal courts for violations of their federal statutory or constitutional rights. *Monroe v. Pape*, 365 U.S. 167, 171 (1961). However, public officials enjoy an immunity from liability under Section 1983 known as "qualified immunity." When properly applied, qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

The Supreme Court has articulated a two-part test for determining if a public official is entitled to qualified immunity. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). First, the Court must determine whether the defendant's conduct violated a federal right. *Tolan v. Cotton*, 572 U.S. 650, 656 (2014). Second, the Court must determine "whether the right in question was 'clearly established' at the time of the violation." *Id.* (citing *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). A court has discretion to determine the order in which it considers those questions. *Pearson*, 555 U.S. at 236.

B. **Officer Coborn is entitled to qualified immunity because the Plaintiffs have failed to identify "clearly established law."**

   *1. The Constitutional Violation*

"An officer's use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment." *Hatcher v. Bement*, 676 F. App'x 238, 242 (5th Cir. 2017) (internal marks and citations omitted). To state a claim for excessive or deadly force against a police officer, a plaintiff must demonstrate "(1) an injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Ontiveros v. City of Rosenberg*, 564 F.3d 379, 382 (5th Cir. 2009) (internal marks and citations omitted).

"An officer's use of deadly force is presumptively reasonable when the officer has reason to believe that the suspect poses a threat of serious harm to the officer or to others." *Id.* (citations omitted). A court must determine the reasonableness of the deadly force "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989).

The only dispute on this issue is whether Officer Coborn used clearly unreasonable excessive force against Baker. Such a determination "requires careful attention to the facts and circumstances of each particular case, including (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* "Excessive force claims are necessarily fact-intensive; whether the force used is excessive or unreasonable depends on the facts and circumstances of each particular case." *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) (internal marks omitted).

At the outset, the first and third factors weigh heavily in favor of Officer Coborn. The first factor is easily met here: auto theft is a serious offense. *See United States v. Coleman*, 78 F.3d 154, 158–60 (5th Cir. 1996) (discussing Congress's actions to curb auto theft). The third factor is easily met, too: the undisputed evidence reflects that Baker (1) actively resisted arrest by ignoring the express and repeated instructions of law enforcement, and (2) actively attempted to evade arrest by flight using the stolen vehicle. *See, e.g.*, *Malbrough v. Stelly*, 814 F. App'x. 798 (5th Cir. 2020) (unpublished) (holding that officers' use of deadly force was objectively reasonable where suspect ignored verbal commands and drove a vehicle at or close to the officers); *Sanchez v. Edwards*, 433 F. App'x. 272 (5th Cir. 2011) (unpublished) (same).

But the second factor is a closer call. Here, the video/audio evidence reveal that the stolen vehicle's brake lights were activated *before* Officer Coborn discharged his firearm — consistent with Defendants' testimony and theory of the case. Dashcam Video at 0:46–48; ECF No. 38 at 9; ECF No. 39–1, App. 244. But the parties hotly dispute the *testimonial* evidence that corresponds to the second-by-second video/audio evidence — specifically, time mark 0:46, time mark 0:47, and time mark 0:48. *Id.* ECF No. 38 at 9; ECF No. 39–1, App. 244; ECF No. 52 at 153, 159, 166, 169.

In a motion for summary judgment, all evidence must be viewed in a light most favorable to the nonmoving party. Plaintiffs have offered evidence that, if believed, *could* show that Officer Coborn discharged his firearm *before* Baker shifted the stolen vehicle into drive. ECF No. 52 at 159, 166, 169. A rational jury could conclude that under such circumstances Officer Coborn's use of deadly force was unreasonable. It does not *have* to find this, of course. But if it *could* find it, then Plaintiffs have successfully met their burden for the first part of the qualified immunity test.

### 2. Clearly Established Law

Viewing the disputed evidence in the light most favorable to Plaintiffs, Officer Coborn arguably violated Baker's Fourth Amendment rights. But that does not defeat qualified immunity. Plaintiffs must also demonstrate that the law was clearly established — that, as of February 21, 2018, any reasonable officer would have known that Officer Coborn's behavior was unlawful. *Vann v. City of Southaven*, 884 F.3d 307, 310 (5th Cir. 2018) ("It is the plaintiff's burden to find a case in his favor that does not define the law at a 'high level of generality.'") (quoting *Cass v. City of Abilene*, 814 F.3d 721, 732–33 (5th Cir. 2016)).

*Graham v. Connor* clearly established that the use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness. *Joseph v. Bartlett*, 981

F.3d 319, 336 (5th Cir. 2020). "But aside from 'rare,' 'obvious' cases, the allegedly violated right cannot be defined at this level of generality to overcome a qualified-immunity defense." *Id.* Otherwise, "[i]t could plausibly be asserted that any violation of the Fourth Amendment is 'clearly established,' since it is clearly established that the protections of the Fourth Amendment apply to the actions of police." *Wilson v. Layne*, 526 U.S. 603, 615 (1999). Rather, "the right allegedly violated must be defined at the appropriate level of specificity." *Id.*

"The Supreme Court has explained that for a court to deny qualified immunity based on 'clearly established' law, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Bartlett*, 981 F.3d at 337 (quoting *White v. Pauly*, 137 S. Ct. 548, 551 (2017)). This means existing precedent must "squarely govern[ ]" the specific facts at issue, such that only someone who is "plainly incompetent" or who "knowingly violates the law" would have behaved as the official did. *Mullenix v. Luna*, 136 S. Ct. 305, 310 (2015). Because this "specificity is especially important in the Fourth Amendment context, the Supreme Court has stressed the need *to identify a case* where an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment." *Bartlett*, 981 F.3d at 337 (quoting *District of Colombia v. Wesby*, 138 S. Ct. 577, 590 (2018)) (internal marks omitted) (emphasis added).

The Magistrate Judge, after mistakenly finding there was fact issue of whether Officer Coborn fired at all before the car moved, did not address whether those gunshots violated clearly established law. Consequently, the Court ordered the parties to address that question with supplemental briefing, specifically giving Plaintiffs an additional opportunity to identify caselaw that would have given fair notice to Officer Coborn that his actions were unlawful. ECF No. 72. Plaintiffs identified three Fifth Circuit cases in their briefing. ECF No. 73 at 8; *Edmond v. City of*

*New Orleans*, 20 F.3d 1170 (5th Cir. 1994) (unpublished but precedential);[2] *Ougel v. Amite City Police Dept.*, 352 F. App'x. 941 (5th Cir. 2009) (unpublished *and* un-precedential);[3] *Baker v. Putnal*, 75 F.3d 190 (5th Cir. 1996). All three cases are unpersuasive.[4]

The first case cited by Plaintiffs is *Edmond v. City of New Orleans*. In that case, under the plaintiffs' version of the facts, plainclothes officers with their guns drawn approached a car driven by the plaintiffs. 20 F.3d at 1170. The officers did not identify themselves. *Id.* The plaintiffs believed they were being robbed and attempted to drive away. *Id.* To do so, the plaintiffs tried to maneuver around the parked car of the officers who had boxed in the plaintiffs. *Id.* Still without identifying themselves, the officers fired through the window. *Id.* The plaintiffs were injured in the shooting. *Id.*

The Fifth Circuit determined that there was a genuine dispute of material fact regarding whether the force was excessive, explaining:

> The officers justify the use of force against [plaintiffs] Edmond and Oden because Oden drove directly at [Officer] Poole at a high rate of speed, in what appeared to be an intentional manner. The plaintiffs contest whether Oden drove at Poole. The plaintiffs also argue that they would not have tried to get away if the police officers had identified themselves. Resolving whether the police had a need to use force, and whether they used force in an objectively reasonable way, requires resolving disputed testimony about what happened when the police stopped the plaintiffs' car.
>
> This case raises the kind of issue . . . about whether a police officer's use of force was justified or was "unreasonably created" when he *stepped in front of a moving car.*
>
> *Id.* (emphasis added).

---

[2] 5th Cir. 47.5.3

[3] 5th Cir. 47.5.4

[4] Plaintiffs also argue this case is an "obvious" one under *Tennessee v. Garner*, 471 U.S. 1 (1985), rendering the need to identify factually analogous caselaw unnecessary. ECF No. 73 at 9. But Plaintiffs only devote two sentences to this argument. *Id.* "The standard for obviousness is sky high, and this case does not meet it." *Bartlett*, 981 F.3d at 337. Indeed, "the Supreme Court to date has *never* identified an 'obvious' case in the excessive force context." *Cole v. Carson*, 935 F.3d 444, 474 (5th Cir. 2019) (Ho & Oldham, JJ., dissenting) (emphasis in original).

The facts and circumstances in this case are distinguishable from *Edmond* because the officers here were all wearing clothing that identified them as law enforcement. Additionally, the officers had turned on the red and blue lights of the police SUV while pulling behind the stolen sedan.

Furthermore, as evidenced by the dashcam video, there is no dispute that Officer Coborn stepped in front of the car *before* it moved. In contrast, in *Edmond*, the actual location of the officer relative to the car was in dispute. And it was additionally disputed whether the officer later stepped in front of *a moving car* which "unreasonably created" the justification of use of force. *Id.* These factual differences are material to the inquiry of whether clearly established law put Officer Coborn on fair notice that his conduct was unlawful. *Cole*, 935 F.3d at 474 (Ho & Oldham, JJ., dissenting) ("[T]he Supreme Court [has] reminded lower courts that qualified immunity requires us not only to identify a clearly established rule of law, but to do so with *great specificity*.") (emphasis added).

The second case cited by Plaintiffs is *Ougel v. Amite City Police Dept.*[5] In that case, the plaintiff stole a car from a Porsche dealership and led various law enforcement officials on a high-speed chase through Mississippi and Louisiana. *Ougel*, 352 F. App'x. at 942. Eventually, several officers surrounded and stopped the vehicle. *Id.* One of the deputies broke Ougel's window, put Ougel's left arm in a wrist lock, and began trying to remove him from the vehicle. *Id.* at 943. Another deputy, Officer Foster, moved to the passenger side window of the car. *Id.* The officers ordered Ougel to show his hands and to surrender. *Id.* A moment later, Officer Foster fired a fatal

---

[5] The Fifth Circuit has stated unpublished opinions do "not constitute clearly established law for purposes of [qualified immunity]." *Cooper v. Brown*, 844 F.3d 517, 528 n. 8 (5th Cir. 2016). Plaintiffs admit this but argue *Ougel* "is part of a 'robust consensus' that would give Coborn 'fair warning' that shooting at a stationary car while its occupants hands were visible was illegal." ECF No. 73 at 8 n. 24. To the extent *Ougel* is representative of a broader consensus, the Court will analyze the factual similarities of the case.

shot from the passenger side. *Id.* Forensic evidence showed that Ougel's right arm was in the raised position at the time of the gunshot. *Id.* at 944.

Because this case was at the summary judgment stage, the Fifth Circuit evaluated the case in the light most favorable to the plaintiff. The Court concluded "firing a shot at an unarmed suspect whose left arm was restrained by a wrist lock and whose right arm was in the air would constitute an objectively unreasonable exercise of excessive force because the suspect would at that point not present a danger to the officers present." *Id.*

Even under Plaintiffs' version of events, this case is not factually analogous to *Ougel*. In *Ougel*, Officer Foster said the plaintiff was reaching under the seat presumably for a gun. And it was this fear of a gun that allegedly justified his attack. But that is not the case here. First, Baker was not partially incapacitated by an armlock thereby reducing his inherent danger to the officers. Second, *Ougel* does not clearly establish Baker's rights because *Ougel* does not address the danger posed by a car which is itself a deadly weapon. *Goldston v. Anderson*, 775 Fed. Appx. 772, 773 (5th Cir. 2019) ("[A] vehicle can be a deadly weapon. If an officer believes he or others around him are in danger from the vehicle, it can be reasonable to use deadly force."). An officer who diligently studied *Ougel* would understand not to shoot a partially restrained suspect whose hands were visible. But that same officer would learn nothing about how to react to a situation where an unrestrained, suspected felon ignores officers' verbal commands, starts a car, illuminates the brake lights, and revs the engine, all while an officer was standing six inches in front of the vehicle.

Plaintiffs' third citation, *Baker v. Putnal*, 75 F.3d 190 (5th Cir. 1996), fails for the same reason. The Fifth Circuit recently summarized *Putnal*:

> In [*Putnal*], members of the public told Officer Michael Putnal, a police officer patrolling a crowded Galveston beach area during spring break, that "someone had entered the crowd with a pistol-gripped shotgun."

Minutes later, Officer Putnal heard gunfire and saw the crowd scurrying. There was "a good deal of confusion on the beach." Two people directed the officer to a car in which the gunman was supposedly sitting. Putnal then saw Wendell Baker Jr. and another man sitting in a truck parked on the beach. The parties disputed what happened next. Putnal stated he saw Baker loading a magazine into a handgun, that he warned Baker to freeze or drop the gun, that Baker instead turned the gun upon Putnal, at which point Putnal fired, killing Baker. However, witnesses "state[d] that [Baker] took no threatening action . . . as the officer approached the truck," that Putnal issued no warning to Baker, and that "Baker . . . may have barely had an opportunity to see Putnal before [the officer] fired his gun." The parties did not dispute that Putnal had been searching for a gunman, and that a gun had been recovered from Baker's seat, although they disputed whether and how Baker been holding it, that is, whether he pointed it at Putnal.

. . .

Baker's survivors sued the officer, bringing, inter alia, a Fourth Amendment excessive-force claim. The district court granted Putnal qualified immunity, crediting his account that he had fired in response to Baker turning and aiming the gun at him. On appeal, we reversed and remanded the excessive-force claim for trial. Recognizing the dispute as to the officer's warning, Baker's turn, and the position of Baker's gun, we found "simply too many factual issues to permit the Bakers' § 1983 claims to be disposed of on summary judgment." "Chaos on the beach and Baker['s] mere motion to turn and face Putnal are not compelling reasons to find that [the officer's] use of force was not excessive as a matter of law." Viewing the facts and drawing inferences "in the light most favorable to the nonmoving party," we held that "[t]he number of shots and the nature of the wounds raise . . . more of a question of fact than a court may dispose of on summary judgment.

*Cole*, 935 F.3d at 453–54.

But just like *Ougel, Putnal* is also not analogous to the present case. In *Putnal*, the plaintiff did not ignore verbal commands. There was no concern about the truck itself being used as a weapon. There was no officer located in front of the vehicle. And there was no indication that the plaintiff intended to try and flee in the truck.

In essence, Plaintiffs' arguments and case citations repeatedly focus purely on the factual question of where Baker's hands were at the time Officer Coborn opened fire. But Officer Coborn did not fire just because Baker was allegedly reaching below the dash for a gun. Officer Coborn

also feared being run over by the stolen Infiniti. Neither *Ougel* or *Putnal* address the facts present

in this case—namely, the danger of a running car, a fleeing felon, and an officer positioned directly

in front of the vehicle. Accordingly, Plaintiffs have failed to establish that Officer Coborn's action

violated clearly established law and thus Officer Coborn is entitled to qualified immunity.

### C. Officers Coborn and McHugh's gunshots after the vehicle began moving were objectively reasonable.

The Court will now address the gunshots from both Officers Coborn and McHugh that all

occurred after Baker undisputedly shifted the car into gear, turned the wheel to the left, and stepped

on the gas pedal. The Magistrate Judge determined "[a]lthough the officers may have been justified

in shooting at Baker when he started his car and the car moved forward as Baker steered it to his

left, the Court concludes that no reasonable law enforcement officer would continue to shoot into

the center of the trunk of the car, in the rear window, and in the center console of the middle of the

back seat as Baker was driving away from him." ECF No. 65 at 17. For the following reasons, the

Court disagrees and therefore REJECTS IN PART the findings and conclusions of the Magistrate

Judge.

The same *Graham* factors regarding clearly unreasonable excessive force explained in

Part B govern the analysis here as well. Additionally, the Fifth Circuit has previously addressed

similar questions in police shootings where suspects were attempting to flee in automobiles.

*Hathaway*, 507 F.3d. at 321; *Malbrough v. Stelly*, 814 F. App'x. 798 (5th Cir. 2020) (unpublished);

*Sanchez v. Edwards*, 433 F. App'x. 272 (5th Cir. 2011) (unpublished). The Fifth Circuit has

identified two factors that are particularly relevant in determining whether the use of force was

reasonable: (1) the amount of time the officers had to respond to the vehicle, and (2) the officers'

proximity to the vehicle's path. *Hathaway*, 507 F.3d at 321. The Fifth Circuit has also suggested

that an officer may act unreasonably in firing at a fleeing vehicle "after the perception of new information indicating the threat was past." *Id.* at 322.

In this case, the summary judgment evidence shows that the officers' use of deadly force was objectively reasonable. The officers had reason to suspect that Baker's actions posed a threat of serious physical harm to Officer Coborn, who was standing in front of Baker's vehicle. *Hathaway* is particularly instructive on this matter. In that case, the officer was standing eight to ten feet in front of a car. *Id.* at 316. The car suddenly accelerated toward him, zigzagging as he tried to get out of the way and ultimately striking him on the leg. *Id.* The officer fired his sidearm killing the driver but could not remember whether he did so before, during, or *immediately after* the vehicle struck him. *Id.* These events unfolded "in the snap of a finger." *Id.* The Court determined that the officer's actions were objectively reasonable, particularly given his proximity to the car and the short time frame. *Id.* at 322.

Considering the Fifth Circuit's reasoning in *Hathaway*, the officers' actions in this case were reasonable. First, the officers had less than a second to respond to Baker's acceleration. Second, Officer Coborn was directly in front of the car when it started to move. In the dashcam video, Officer Coborn appears to take several hurried, stumbling steps backwards to avoid being hit. Dashcam video at 0:47–51.[6]

Plaintiffs stress the wheels of the car were turned to the left away from Officer Coborn while the car was accelerating. But "it's not relevant, whether, in hindsight, [the officer] was ever in real danger. We must ask whether it would have *appeared* to a reasonable officer on the scene that [an officer was] in danger." *Malbrough*, 814 F. App'x at 805 (emphasis in original). When

---

[6] This is contrary to the Magistrate Judge's determination. It is difficult to see because the stolen car blocks the view of Officer Coborn, but he backs away from the car when it moves. This is evident if one watches the top of Officer Coborn's head as the car moves and one can observe that his weight has shifted backwards as he pivots after the car.

Baker started accelerating, there was no way for the officers to know whether he would drive away from Officer Coborn or swerve into him, as the driver did in *Hathaway*. Because of Officer Coborn's proximity to the path of the car and the extremely limited time the officers had to respond to the events that unfolded, the officers' actions were reasonable. *Hathaway*, 507 F.3d at 322 ("Given the extremely brief period of time an officer has to react to a perceived threat like this one, it is reasonable to do so with deadly force. It is this brevity, and the coordinate rapid response that it demanded from [the officer], that is the distinguishing factor in this case.") (citation omitted).

Plaintiffs and the Magistrate Judge both maintain the final shots fired by the officers were unreasonable because the officers fired them after Officer Coborn was clearly safe. Plaintiffs cite *Lytle v. Bexar County* as support for its argument. 560 F.3d 404 (5th Cir. 2009). But *Lytle* is easily distinguishable. In that case, the Fifth Circuit held that a police officer was not entitled to qualified immunity when the officer fired shots through the rear window of a vehicle driven by a fleeing suspect. *Id.* at 417. The Fifth Circuit distinguished *Lytle* from *Hathaway* because the plaintiff's evidence in *Lytle* showed that the officer did not fire until the fleeing vehicle was three or four houses away. *Id.* at 412. And it was possible that "ten seconds, perhaps even more" had elapsed since the vehicle had passed the officer. *Id* at 414. The Fifth Circuit thus concluded that "sufficient time might have passed for [the officer] to perceive that the threat to him had ceased." *Id.*

In contrast, in *Hathaway*, the Fifth Circuit determined the time between the vehicular assault and the gunshot "was insufficient for the officer to perceive 'new information indicating the threat was past.'" *Id.* (quoting *Hathaway,* 507 F.3d at 322). This case is far closer to *Hathaway* than it is to *Lytle*. Here, the officers stopped firing less than a mere two seconds after the car passed Officer Coborn. Dashcam video at 0:47–50.

Plaintiffs essentially asks the Court to examine the video, frame by frame, to determine when Officer Coborn was plainly free from danger and where in relation to the car the officers were when they fired their last shots. Seen in real time, it is undisputable that in the few seconds between when the officers began firing and when they stopped, they did not have time to process any new information suggesting that Officer Coborn was out of danger. Once the officers perceived the car had safely passed Officer Coborn, they ceased firing and began to pursue Baker on foot. This time frame differentiates this case from cases like *Lytle* in which the officer began firing well after a fleeing suspect's vehicle had passed him by. *See also Sanchez*, 433 F. App'x at 275 ("Because of the short period of time in which the officers had to react to Sanchez's abrupt change of direction and Banquer's obvious peril given his position in front of the vehicle, we have *absolutely no trouble* finding that the officer's decision to use deadly force was reasonable under the circumstances.") (emphasis added).

It is both tragic and unfortunate that Baker was killed in the altercation with the officers. But taking Plaintiffs' approach would violate the Supreme Court's command that "the calculus of 'reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation.'" *Cole*, 935 F.3d at 462 (Jones, J., dissenting) (quoting *Graham*, 490 U.S. at 396–97). Courts cannot allow the "theoretical, sanitized world of our imagination to replace the dangerous and complex world that policemen face every day." *Stroik v. Ponseti*, 35 F.3d 155, 158 (5th Cir. 1994) (quoting *Smith v. Freland*, 954 F.2d 343, 347 (6th Cir. 1992)). That the officers' decision may now be "subject to second-guessing — even legitimate second-guessing — does not make [their] actions objectively unreasonable given the particular circumstances of the shooting." *Hathaway*, 507 F.3d at 322. Because the officers here

reasonably believed that Baker posed an immediate threat to officers, the officers did not use excessive force in violation of the Fourth Amendment. Accordingly, the officers are both entitled to qualified immunity.

### D. Municipal Liability

Plaintiffs also brought a Section 1983 claim against the City of Stratford for failure to train its employees and for instituting unconstitutional practices, policies, and customs. The Magistrate Judge determined that "Plaintiffs have not met their burden of raising a fact issue on whether (1) an official policy or custom, of which (2) a policymaker had actual or constructive knowledge, and (3) a constitutional violation whose moving force is that policy or custom, the City is entitled to summary judgment on the Plaintiffs' claims against it." ECF No. 65 at 22. Accordingly, the Magistrate Judge recommends that Defendants' motion for summary judgment on the claims against the City be granted. Plaintiffs did not file an objection this recommendation.

After making an independent review of the pleadings, files, and records in this case and the findings, conclusions, and recommendation of the Magistrate Judge, the Court concludes that the findings and conclusions relating to the City of Stratford are correct. It is therefore ORDERED that the findings, conclusions, and recommendation of the Magistrate Judge are ADOPTED IN PART. The Court GRANTS Defendants' motion. All claims against the City are DISMISSED.

### CONCLUSION

Plaintiffs have failed to overcome Defendants' qualified immunity or establish *Monell* liability. Accordingly, Defendants' Motion (ECF No. 37) is GRANTED IN ITS ENTIRETY. All of Plaintiffs' claims are DISMISSED. Because summary judgment fully disposes of this case, Defendants' motion to exclude testimony (ECF No. 44) is DENIED as moot.

**SO ORDERED.**

March _11_, 2021.

_____

MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE