IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| IRA DARLINA BAKER, *et al.*, | |
| Plaintiffs, | |
| v. | 2:19-CV-077-Z-BP |
| RICHARD KEITH COBORN, *et al.*, | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are Defendants' Objections (ECF Nos. 124, 125), filed February 12, 2025, to the Magistrate Judge's Findings, Conclusions, and Recommendations (ECF No. 123) for the disposition of Defendants' Second Motion for Summary Judgment (ECF No. 96). In the first Objection, Defendants object to several factual and legal opinions in the Magistrate Judge's Findings, Conclusions, and Recommendation. ECF No. 124. In the second, they further object to the Magistrate Judge's recommendation to overrule Defendants' objection to Plaintiffs' summary judgment evidence. ECF No. 125. After considering the Magistrate Judge's Findings, Conclusions, and Recommendation, the relevant law, and the briefing, the Court **OVERRULES** Defendants' Objections and **ADOPTS** the Magistrate Judge's Findings, Conclusions, and Recommendation. Accordingly, Defendants' Second Motion for Summary Judgment at ECF No. 96 is **DENIED**.

**BACKGROUND**

Defendant Officers Richard Coborn and Michael McHugh ("Defendants") fired shots at Darion Baker ("Baker") in an incident where the Defendants attempted to stop Baker, but he fled in a stolen vehicle. Two of the shots hit Baker. One killed him. The factual details of the incident have been relayed

1

in detail in previous opinions. *See* ECF No. 65 at 1–6; ECF No. 75 at 2, 4–7; *Baker v. Coborn*, 68 F.4th 240, 242–44 (5th Cir. 2023). Thus, the Court need not recount them in more detail here.

Ira Darlina Baker, individually and as administratrix of Baker's estate, along with other plaintiffs (together, "Plaintiffs") sued Defendants under 42 U.S.C. Section 1983 for excessive force resulting in Baker's death. This Court initially granted summary judgment in favor of Defendants. ECF No. 75, 76. The Fifth Circuit affirmed in part, reversed in part, and remanded. *Baker*, 68 F.4th at 251. In its opinion, the Fifth Circuit held that the Defendants were entitled to qualified immunity as to the shots fired "while Coborn was standing in front of the stationary vehicle." *Id.* at 245. And it held that Defendants were not entitled to summary judgment for the shots fired "when the sedan began to move away from Coborn." *Id.* They were not entitled to summary judgment because Plaintiffs "established genuine disputes of material fact regarding whether the officers' use of force was excessive and objectively unreasonable" for that second round of shots. *Id.* at 251. The Fifth Circuit did not express a view on whether Defendants were entitled to qualified immunity for the shots fired "when the sedan began to move away from Coborn." *Id.* at 245, 251 & n.11.

After both sides provided supplemental or amended expert evidence, Defendants again moved for summary judgment. ECF Nos. 91, 92, 95, 96. They argued two bases for summary judgment. First, they argued that Coborn did not *seize* Baker under the Fourth Amendment because he did not fire the fatal shot. ECF No. 97 at 11–12. Second, they claim they are entitled to qualified immunity for the second round of shots fired after the "sedan began to move away from Coborn." *Baker*, 64 F.4th at 245; ECF No. 97 at 14. Plaintiffs argue the Fifth Circuit's opinion identified fact issues that this Court may not now dismiss, and that qualified immunity would be inappropriate because the law was clearly established at the time of the incident that officers could not exercise deadly force against a fleeing

2

person because he did not present an immediate threat. ECF No. 103 at 6; *See, e.g., Lytle v. Bexar Cnty.*, 560 F.3d 404 (5th Cir. 2009).

This Court referred Defendants' second motion for summary judgment to the Magistrate Judge for Findings, Conclusions, and Recommendations on October 30, 2024. ECF No. 117. The Magistrate Judge presented his Findings, Conclusions, and Recommendation on January 29, 2025, in which he recommended that this Court overrule Defendants' objection to Plaintiffs' summary judgment evidence at ECF No. 108 and that this Court deny Defendants' second motion for summary judgment. ECF No. 123. The Magistrate Judge found that, when viewed in the light most favorable to Plaintiffs, whether Coborn seized Baker under the Fourth Amendment should be decided at trial. *Id.* at 7. Further, the Magistrate Judge found that the law was clearly established at the time of Baker's death that qualified immunity did not protect law enforcement officers when they fire at fleeing people in a vehicle after an imminent risk of serious bodily harm had passed. *Id.* at 10 (first citing *Lytle*, 560 F.3d 404; then citing *Flores v. City of Palacios*, 381 F.3d 391 (5th Cir. 2004); then citing *Edmond v. City of New Orleans*, No. 93-3602, 1994 WL 144782 (5th Cir. Apr. 7, 1994); then citing *White v. Balderama*, 153 F.3d 237 (5th Cir. 1998); and then citing *Mason v. Lafayette City-Par. Consol. Gov't*, 806 F.3d 268 (5th Cir. 2015)).

Defendants objected twice. Their first presented three specific objections: First, they objected "to the Magistrate Judge's failure to find that the second round of shots were fired 'when the sedan began to move away from Coborn.'" ECF No. 124 at 5. Second, they objected that the "law was clearly established" at the time of the shooting because they believe the Magistrate Judge "defined [it] at an impermissibly high level of generality." *Id.* Third, they objected "to the Magistrate Judge's conclusion that a factual dispute exists regarding which officer seized Baker." *Id.* at 8. Their second objection

3

merely objected to the Magistrate Judge's recommendation that their previous objection to Plaintiffs' additional summary judgment expert evidence be overruled. ECF No. 125.

**LEGAL STANDARD**

**I. Objections to a Magistrate Judge's Recommendation on a Dispositive Order**

After a magistrate judge serves a copy of his findings and recommendation on both parties, a party "may serve and file specific written objections to the proposed findings and recommendations" within 14 days. FED. R. CIV. P. 72(b)(2). At that point, the "district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." FED. R. CIV. P. 72(b)(3); see also Davidson v. Ga.-Pac., L.L.C., 819 F.3d 758, 762 (5th Cir. 2016) ("[R]ulings by a magistrate judge on dispositive matters—motions to dismiss and for entry of summary judgment being the common examples—are mere recommendations subject to de novo review when properly challenged by the losing party.") (citing 28 U.S.C. § 636(b)(1)). The district judge "may accept, reject, or modify the recommended disposition" based on his review of the magistrate judge's findings and recommendation. FED. R. CIV. P. 72(b)(3).

**II. Summary Judgment**

Summary judgment is appropriate if the movant shows there is no genuine dispute of material fact, and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The moving party bears the initial burden of demonstrating both. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact dispute is material if it would affect the suit's outcome under the governing law. Id. "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." Triple Tee Golf, Inc. v. Nike, Inc.,

485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp.*, 477 U.S. at 322–25). The court views evidence for summary judgment in the light most favorable to the party opposing summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The court draws all reasonable factual inferences in favor of the nonmovant. *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985). But to establish a true controversy, the nonmovant must show more than "some metaphysical doubt as to the material facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (quoting *Matsushita*, 475 U.S. at 586). The nonmovant may not rely on "conclusory allegations," "unsubstantiated assertions," or "only a scintilla of evidence" to create a factual dispute and preclude summary judgment. *Id.* (internal quotations omitted).

### III. Qualified Immunity

Qualified immunity alters the typical summary judgment standard. *Baker*, 68 F.4th at 244 (citing *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010)). If an official raises a qualified immunity defense, the "moving party is not required to meet its summary judgment burden for a claim of immunity." *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007) (quoting *Cousin v. Small*, 325 F.3d 627, 632 (5th Cir. 2003)). If an official claims the protection of qualified immunity, the burden shifts to the plaintiff to rebut the evidence by showing a genuine fact issue regarding whether the official violated clearly established law. *Brown*, 623 F.3d at 253.

Qualified immunity protects government officials from liability if their conduct did not violate clearly established statutory or constitutional rights that a reasonable officer would have known about. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity requires a two-part inquiry: A court determines "whether an official's conduct violated a statutory or constitutional right of the plaintiff" and "whether the right was 'clearly established' at the time of the violation." *Saucier v. Katz*, 533 U.S. 194, 200–01 (2001).

A right is clearly established when "the contours of the right [are] sufficiently clear [such] that a reasonable official would understand that what he is doing violated that right." *Wernecke v. Garcia*, 591 F.3d 386, 392 (5th Cir. 2009). The "very action in question" must have been previously held unlawful. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "Where no controlling authority specifically prohibits a defendant's conduct, and when the federal circuit courts are split on the issue, the law cannot be said to be clearly established." *Morgan v. Swanson*, 659 F.3d 359, 372 (5th Cir. 2011). Qualified immunity protects all but "the plainly incompetent or those who knowingly violate the law." *Anderson*, 483 U.S. at 641. Thus, qualified immunity is appropriate if the officer's "conduct was objectively reasonable in light of the legal rules that were clearly established at the time of his or her actions," no matter if the plaintiff's constitutional right ended up violated. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002). "The defendant's acts are held to be objectively reasonable unless all reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated" the plaintiff's rights. *Thompson v. Upshur Cnty.*, 245 F.3d 447, 457 (5th Cir. 2001).

### IV. Expert Evidence

Federal Rule of Evidence 702 governs the admissibility of expert evidence. It states that a witness qualifying as an expert because of his "knowledge, skill, experience, training, or education" can offer evidence if it is "more likely than not that" the expert's (1) "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue," (2) "the testimony is based on sufficient facts or data," (3) it is "the product of reliable principles and methods," and (4) the expert's opinion "reflects a reliable application of the principles and methods to the facts of the case." FED. R. EVID. 702. The evidence's proponent has the burden "to establish its admissibility by a preponderance of the evidence." *Am. Can! v. Arch Ins. Co.*, 597 F. Supp. 3d 1038,

1044 (N.D. Tex. 2022). The proponent need only demonstrate that the expert is "qualified and the testimony is relevant and reliable." *Id.* (citing *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998)).

The district court has discretion whether to admit expert witness testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). The court has "considerable flexibility in assessing the reliability of expert testimony." *Equal Emp. Opportunity Comm'n v. Mod. Grp., Ltd.*, 725 F. Supp. 3d 644, 660–61 (E.D. Tex. 2024) (citing *Kumho*, 526 U.S. at 141). Courts look to the nonexhaustive *Daubert* factors to evaluate whether the underlying reasoning or methods of an expert's testimony are reliable. These include "(1) whether the expert's theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the challenged method; and (4) whether the theory or technique is generally accepted in the relevant scientific community." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 593–94 (1993). But still, these factors are not always applicable, and a court has "broad latitude" to decide how "to determine reliability" and in its "ultimate reliability determination." *Kumho*, 526 U.S. at 141–42. The court must be careful to focus "solely on principles and methodology" and "not on the conclusions that they generate." *United States v. Hodge*, 933 F.3d 468, 477 (5th Cir. 2019) (quoting *Daubert*, 509 U.S. at 595). Even though the court is the gatekeeper, "the rejection of expert testimony is the exception rather than the rule." *United States v. Perry*, 35 F.4th 293, 330 (5th Cir. 2022) (quoting *Puga v. RCX Sols., Inc.*, 922 F.3d 285, 294 (5th Cir. 2019)). The Court's core role is to ensure that only reliable and relevant evidence reaches the jury. *Puga*, 922 F.3d at 293.

ANALYSIS

### I. Objection 1: The Magistrate Judge's Failure to Find That the Second Round of Shots Were Fired "when the sedan began to move away from Coborn"

Defendants first object to the Magistrate Judge's characterization of the shot division. They argue that the Fifth Circuit divided the shots into two groups: (1) the shots fired "while Coborn was standing in front of the stationery [sic] vehicle" and (2) the shots fired "when the sedan began to move away from Coborn." ECF No. 124 at 5 (quoting *Baker*, 68 F.4th at 245). They aver that this "[e]ssentially" means the shots should be divided into those fired "before the car moved and after the car moved." *Id.* They object to the Magistrate Judge's "finding that the second round of shots were shots the officers 'fired at [Baker] as the car was moving away from Coborn.'" *Id.* (alteration in original) (quoting ECF No. 123 at 2). They believe that this "analysis misses the shots fired while Coborn stood in front and Baker used the car as a deadly weapon against Coborn." *Id.* Thus, they argue, the Magistrate Judge's reliance on cases that provide notice to an officer that he may not shoot at a fleeing vehicle if the vehicle is not used as a deadly weapon is incorrect.

The Magistrate Judge *did* find the second round of shots were fired when the sedan began to move away from Coborn. *See, e.g.*, ECF No. 123 at 6 ("As to the second round of shots, fired after Baker's car had begun moving past Defendants ...."); *id.* at 2. Defendants' objection that the Magistrate Judge's analysis "misses the shots fired while Coborn stood in front and Baker used the car as a deadly weapon against Coborn" merely illuminates one of the factual disputes precluding summary judgment here: whether Baker was using the vehicle as a deadly weapon against Coborn. The Fifth Circuit explicitly noted this material dispute. It said "there are significant factual disputes about the manner in which the incident took place. . . . The facts here—viewed in the light most favorable to plaintiffs—show that Baker attempted to drive *away from* Coborn." *Baker*, 68 F.4th at 251 (emphasis

8

added). Thus, "a reasonable factfinder could determine that the officers acted unreasonably when they fired the *second round of shots*." *Id.* (emphasis added).

Here, the Magistrate Judge made the very finding Defendants dispute. Even more, he relied on cases that, at least in part, the Fifth Circuit relied on. *See, e.g., Hathaway v. Bazany*, 507 F.3d 312 (5th Cir. 2007); *Harmon v. City of Arlington*, 16 F.4th 1159 (5th Cir. 2021); *Lytle*, 560 F.3d 404. Defendants protest that the Fifth Circuit held it was incorrect to rely on cases that did not have a vehicle used as a deadly weapon. ECF No. 124 at 5. But the Fifth Circuit only held that for the first round of shots—not the second. *See Baker*, 68 F.4th at 246–47. Instead, the Fifth Circuit itself relied on cases for the second round of shots where a vehicle had ceased being used as a deadly weapon. *Id.* at 249–50 (analyzing *Lytle*, 560 F.3d 404).

Defendants' First Objection is **OVERRULED** because the Magistrate Judge (1) made Defendants' sought finding on the second round of shots, (2) he relied on the same cases the Fifth Circuit did, and (3) he properly did not interpret the facts in the movant's favor.

## II. Objection 2: The Magistrate Judge's Conclusion That the Law Was Clearly Established for the Second Round of Shots

Defendants object to the Magistrate Judge's finding that they are not entitled to qualified immunity because, at the time of the shooting, they were on notice that they "may not use deadly force against a person who was fleeing from the officer and did not pose a sufficient threat of harm or immediate danger to the officers or others." ECF No. 123 at 11. First, they argue that the Magistrate Judge stated the law "too generally." ECF No. 124 at 6. He did so because he failed to rely on a case that "squarely governs the case here." *Mullenix v. Luna*, 577 U.S. 7, 13 (2015) (emphasis omitted) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 201 (2004)). Second, they argue that it is improper to rely on any case where the car was not used as a deadly weapon. Third, they argue that the Magistrate Judge

9

relied on some cases released after the events in question in this case. And fourth, they argue the Magistrate Judge impermissibly relied on out-of-circuit cases.

First, the Magistrate Judge did not state the law too generally. Courts have long recognized that there needs to be "a fairly similar factual situation." *Doe v. Bonath*, 705 F. Supp. 3d 690, 721 (W.D. Tex. 2023). But the exact same facts need not exist. The Supreme Court has held that "the very action in question" does not need to have been held unlawful previously. *Anderson*, 483 U.S. at 640. Instead, the law is "clearly established only where there is a *sufficient factually-similar precedent* such that 'every reasonable official would understand that [the conduct] violates that right." *Reyna v. Garza*, 569 F. Supp. 3d 567, 586 (S.D. Tex. 2021) (alteration in original) (emphasis added) (quoting *Anderson*, 483 U.S. at 640). An *exact* factual duplicate is not required because the core principle is whether the officer had "fair warning" that his conduct would be violating a right. *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004). In fact, "notable factual distinctions between the precedents relied on and the cases then before the Court" can exist *if* the caselaw "gave reasonable warning that the conduct then at issue violated constitutional rights." *Hope v. Pelzer*, 536 U.S. 730, 740 (2002) (quoting *United States v. Lanier*, 520 U.S. 259, 269 (1997)). In his "clearly established" analysis, the Magistrate Judge did not state the law too generally because an exact factual analog need not exist if he relied upon cases with sufficiently *similar* facts.

Second, as explained, Defendants' objection that the Magistrate Judge relied on cases where a car may not have been used as a weapon rings hollow. The Fifth Circuit only explained that those cases are unhelpful when analyzing the first round of shots—not the second. The Fifth Circuit relied on one of the same cases Defendants object to here. *See* ECF No. 124 at 6 (objecting to the use of *Lytle v. Bexar County*); *Baker*, 68 F.4th 249–50 (relying on *Lytle v. Bexar County*). The Magistrate Judge did not err

10

in relying on other cases where a car may not have been used as a weapon because the Fifth Circuit did likewise.

Third, Defendants object to the Magistrate Judge citing cases released after the events in question here. *See Morrow v. Meachum*, 917 F.3d 870, 880 (5th Cir. 2019) (rejecting use of a case decided after the at-issue events); *Anderson*, 483 U.S. at 639 (explaining the "legal rules" must have been "'clearly established' at the time [the official action] was taken"). Defendants highlight three cases the Magistrate Judge cited or used that were released after the events here. *See, e.g., Edwards v. Oliver*, 31 F.4th 925 (5th Cir. 2022); *Poole v. City of Shreveport*, 13 F.4th 420 (5th Cir. 2021); *Trevino v. Trujillo*, 756 F. App'x 355 (5th Cir. 2018). Defendants are correct that the Magistrate Judge should not base his analysis on these cases. But he did not. None of the Magistrate Judge's analysis rested on any of these cases and he did not analyze any of them. Rather, he only included them to note that Plaintiffs cited them in their argument. If the Magistrate Judge erred in including them, it did not affect his conclusion or recommendation.

Fourth, Defendants object that the Magistrate Judge cited out-of-circuit cases. They argue that the out-of-circuit cases do not establish a "robust consensus of persuasive authority" on the question. *Morgan v. Swanson*, 659 F.3d 359, 382 (5th Cir. 2011) (internal quotation omitted). But again, whether they do or not, the Magistrate Judge did not rely on them for his conclusion or recommendation. Rather, again, he only included them to note that Plaintiffs cited them in their argument "to show a healthy consensus of authority that officers could not lawfully fire on a vehicle that was not an immediate risk of harm to them or others." ECF No. 123 at 13. Instead, the Magistrate Judge concluded that the "law in the *Fifth Circuit* was clearly established as of February 21, 2018, that it was a constitutional violation

to shoot a person who was fleeing the scene in a motor vehicle, where the driver posed no immediate threat to the officers or others." *Id.* (emphasis added).

Accordingly, Defendants' second objection is **OVERRULED**.

### III. Objection 3: The Magistrate Judge's Conclusion That a Factual Dispute Exists About Which Officer Seized Baker

Defendants object to the Magistrate Judge's conclusion that a factual dispute exists about which officer seized Baker. They argue that because the Magistrate Judge relied on the opinion of Plaintiffs' expert Michael Ybanez, the Magistrate Judge created a fact issue where none existed before. Further, they claim that this is a case "where the videos speak for themselves." ECF No. 124 at 9. They surprisingly claim that the videos illuminate which officer shot Baker. Because, they argue, "Coburn [sic] is on the driver's side of the vehicle when the last two shots are fired, not in a position where he could shoot Baker in the back," then McHugh must have shot Baker. *Id.* at 9–10.

This is not a case where the videos clearly show which officer shot Baker. The Fifth Circuit, from the videos and other evidence before it, concluded "it is unclear which officer fired the shot that killed Baker, and it is clear that both officers shot at the rear of the sedan." *Baker*, 68 F.4th at 248; *see also id.* at 244 n.4 ("Nevertheless, it is otherwise unclear from the evidence which officer fired the fatal shot or the shots that struck the car from the rear.").

After the Fifth Circuit found a factual dispute, the parties presented additional expert evidence. *See* ECF Nos. 91, 92, 95. Plaintiffs presented one expert who concluded that McHugh probably shot Baker and one that concluded Coborn probably shot Baker. In response, Defendants boldly asserted the parties *agreed* that McHugh shot Baker in their second motion for summary judgment. ECF No. 97 at 11–14. But Plaintiffs did not agree. *See* ECF No. 103 at 25–28. They pointed to one expert witness who only opined McHugh *probably* shot Baker and the other, Mr. Ybanez, who opined Coborn did.

Even more, Plaintiffs pointed to the passenger's testimony who recalled Baker said he was shot only after McHugh had ceased firing. ECF No. 103 at 38.

Regardless of whether the Magistrate Judge should have considered Mr. Ybanez's opinion or not (more on that next), the Magistrate Judge did not err in recognizing a fact issue existed about which officer seized Baker. The jury could decide to credit the passenger's testimony that contradicts Defendants' position. Or the jury could conclude Plaintiffs' one expert who thought it more probable McHugh shot Baker did not conclusively resolve the factual dispute the Fifth Circuit found from the evidence and videos. If the Magistrate Judge did not err in relying on Mr. Ybanez's expert opinion, then his view that Coborn shot Baker would conflict with Plaintiffs' other expert who opined the opposite.

Defendants argue Plaintiffs cannot create factual disputes to defeat a summary judgment motion. They cite to a previous opinion of this Court. In that opinion, this Court rejected clearly contradicting evidence from the same witness which was "without explanation." *Ovalle v. United Rentals (N. Am.), Inc.*, No. 2:18-CV-211, 2021 WL 3022905, at *6 n.8 (N.D. Tex. July 16, 2021). That is not the case here. Rather, Plaintiffs' experts differ because they have differing views on a challenging factual question. Their differences are with explanation because a range of investigators and experts have been unable to resolve the dispute up to this point.

Defendants are correct that a party may not "manufacture a dispute of fact merely to defeat a motion for summary judgment." *Doe ex rel. Doe v. Dall. Indep. Sch. Dist.*, 220 F.3d 380, 386 (5th Cir. 2000) (rejecting a factual dispute when a single witness offered testimony in an affidavit that contradicted his testimony from three years prior). But this so-called "sham affidavit" doctrine typically prevents "a party who has been examined at length on deposition" from "rais[ing] an issue of fact simply by submitting an affidavit contradicting his own prior testimony." *Id.* (quoting *Perma Rsch. & Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969)); *see also* FED. R. CIV. P. 56(h); *Powell v. Dall. Morning*

*News L.P.*, 776 F. Supp. 2d 240, 246 (N.D. Tex. 2011) ("A court cannot consider an affidavit or declaration that contradict prior testimony or admissions for the purposes of creating a fact issue because it is not competent summary judgment evidence."). The "sham affidavit" doctrine does not prevent a material factual dispute from existing when one party has multiple experts with conflicting views.

Defendants' objection is thus **OVERRULED** because the Magistrate Judge properly found a genuine dispute of material fact as to which officer shot Baker.

### IV. Objection to Magistrate Judge's Recommendation to Overrule Defendants' Objection to Plaintiffs' Summary Judgment Evidence

Finally, Defendants object to the Magistrate Judge's recommendation that the Court overrule Defendants' objection (ECF No. 108) to Plaintiffs' expert report from Mr. Ybanez. ECF No. 125. Defendants primarily argue that Mr. Ybanez offers a "conclusory and speculative statement" that Coborn more likely shot Baker than McHugh because Coborn fired more eligible shots than McHugh. ECF No. 125 at 1–2. They aver that Mr. Ybanez failed to "sufficiently develop and explain the analytical link between his experience, the reports, and the information upon which he relied" in reaching this conclusion. *Id.* at 2. They contend that "he fails to explain *why* the data he relies upon supports his opinion and conclusions." *Id.*

Plaintiffs responded to Defendants' original objection. ECF No. 110. They first note that Defendants' objection is untimely. Even if it were timely, they argue Mr. Ybanez utilized reliable evidence in his analysis, and that he came to reliable conclusions with a reasonable degree of probability because he explained his experience and reliably analyzed the scene. ECF No. 110 at 18–28.

First, Defendants' objection is likely untimely. The Scheduling Order governing this case set July 1, 2024, as the deadline for "Motions Regarding Expert Witnesses." ECF No. 90 at 3. These motions challenge the "qualifications or competency of experts," *i.e.*, *Daubert* motions. *Id.* Defendants need not explicitly ground their objection in *Daubert*. It is enough that their objection regards an

expert witness and challenges his qualifications or competency. In *Maxwell v. Jenkens & Gilchrist, P.C.*, this district rejected an objection "challenging and objecting to" an expert because the expert had never "personally examined" the subject and his opinion was allegedly "without factual foundation" after it was filed late. No. 3:05-CV-402, 2006 WL 8437326, at *7 (N.D. Tex. Apr. 27, 2006). Defendants make much the same arguments here. They challenge Mr. Ybanez's report in part because his opinion "is not supported by reliable facts" and he did not personally "inspect[] the scene or car, nor . . . take measurements or make calculations." ECF Nos. 108 at 4, 125 at 2. Defendants do not argue to modify the scheduling order nor explain their failure to comply. They had five months to challenge Mr. Ybanez's expert report. *See* ECF No. 110 at 19 n.56 (explaining Mr. Ybanez's "report was disclosed five months before the July 1, 2024 motion deadline"). Instead, Defendants filed an objection to Mr. Ybanez's report two months and eight days late and only after Plaintiffs argued from it extensively in their response to Defendants' second motion for summary judgment. *See* ECF No. 103. Accordingly, Defendants' objection to Mr. Ybanez's report is overruled. *Queen Trucking, Inc. v. Gen. Motors Corp.*, No. 1:06-CV-052, 2007 WL 4458918, at *2 (N.D. Tex. June 8, 2007).

However, Defendants' objection "would fail even if it were not untimely." *Id.* Federal Rule of Evidence 702 permits expert testimony if it is "more likely than not that" the expert's (1) "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue," (2) "the testimony is based on sufficient facts or data," (3) it is "the product of reliable principles and methods," and (4) the expert's opinion "reflects a reliable application of the principles and methods to the facts of the case." FED. R. EVID. 702.

Defendants argue Mr. Ybanez's report fails the first element because he does not "sufficiently develop and explain the analytical link between his experience, the reports, and the information upon

which he relied." ECF No. 125 at 2. They argue "he fails to explain *why* the data he relies upon supports his opinion and conclusions." *Id.* He fails to do so because, they argue, he does not explain sufficiently why he believes it is more likely Coborn fired the fatal shot than McHugh. Because he did not sufficiently explain, they claim his testimony is not "helpful to a trier of fact" and "muddies the issues of the case." *Id.* at 3.

But Mr. Ybanez' testimony meets the first element. As Defendants note, Mr. Ybanez "describes his data collection process and his findings in detail." *Id.* at 2. The Magistrate Judge correctly observed Mr. Ybanez "based his opinions and conclusions on all of the other expert reports in the case and his lengthy experience as a homicide detective." ECF No. 123 at 8–9. And he "emphasized the relative firing positions and locations of the Defendants in relation to Baker as they shot at him." *Id.* at 9. Mr. Ybanez spends pages analyzing the video, bullet defects, angles, and firing stances to determine the possible trajectories of different shots. When Mr. Ybanez concluded his analysis, he opined that McHugh fired two shots which could have killed Baker—and that Coborn fired five shots which could have killed Baker. ECF No. 104-20 at 17–24, 24 ("Thus, up to five (5) of Officer Coborn's shots were fired from a position where they could have struck Mr. Baker in the mid-back, whereas only two (2) of Officer McHugh's shots could have possibly done so."). Of the two "candidate" shots from McHugh, Mr. Ybanez was "skeptical" whether they "could have achieved the required shallow angle on the lower half of the back of the driver's seat" to kill Baker. *Id.* at 23.

Based on his analysis, Mr. Ybanez concludes "it is more likely than not that Coborn fired the bullet that struck Mr. Baker in the mid back." *Id.* at 24. There is no "analytical gap between the [basis for the expert opinion] and the opinion proffered." *State Auto. Mut. Ins. Co. v. Freehold Mgmt., Inc.*, No. 16-CV-02255, 2019 WL 1436659, at *4 (N.D. Tex. Mar. 31, 2019) (alteration in original) (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)). Mr. Ybaenz is not conclusively stating that one of

16

Coborn's shots hit Baker. He is only opining that it is *more likely than not*. After he concluded his detailed analysis, five of Coborn's shots could have hit Baker and two of McHugh's could have, in his opinion. Five is greater than two. Thus, the likeliest option is that one of Coborn's shots hit Baker, in his opinion. Thus, no "great . . . analytical gap" exists. *Id.* Mr. Ybanez analyzed the shots, narrowed them to seven that, in his opinion, could have been the fatal shot based upon his experience and review of the facts. He opined that two could come from McHugh and five from Coborn. Once he arrived at this juncture, simple math reveals it is more likely that one of the fatal shots was Coborn's instead of McHugh's. An expert need not bridge an analysis gap that elementary probabilities determine.

Mr. Ybanez does not rely on five being greater than two *alone* to form his opinion. He also analyzed the officers' stances and the trajectory angles to opine that he was "skeptical" whether McHugh could have fired from a sufficiently shallow angle to have fired the fatal shot at all. ECF No. 104-20 at 23–24. But he was not fully confident enough to "completely rule[] . . . out" the two potential shots from McHugh. *Id.* at 23. This is another independent reason why he opined it was more likely than not that Coborn fired the fatal shot and not McHugh. If McHugh fired less eligible shots than McHugh, and of those eligible shots, McHugh's two were each less likely based on stance, angle, and trajectory, then it is even more likely the fatal one came from Coborn. Mr. Ybanez's analysis of the shots would be helpful to a trier of fact.

Defendants seem to challenge the remaining elements at different points in their objection. They claim Mr. Ybanez's report should be excluded because "the data upon which Ybanez relied did not include an inspection of the scene or car, nor did he take measurements or make calculations." ECF No. 125 at 2. However, Mr. Ybanez relied on photographs, measurements, and videos the Texas Rangers collected in their investigations. The facts an expert relies upon need not be independently admissible. *See Factory Mut. Ins. Co. v. Alon USA L.P.*, 705 F.3d 518, 523 (5th Cir. 2013). Instead, the relied-upon

information need only be "the sort reasonably relied upon in the experts' field." *Id.* Mr. Ybanez testified that "rely[ing] upon objective evidence such as photographs, physical evidence, videos, and audio records ... is the accepted practice for homicide investigations specifically and police practices generally." ECF No. 104-20 at 4. Thus, his report does not violate Federal Rule of Evidence 703 or the second element of Federal Rule of Evidence 702. And his testimony relies on reliable principles and methods because he used his "30 years of professional law enforcement experience, education, and training" to analyze the facts in detail using trajectories, stances, bullet defects, and other data to analyze each shot. *Id.* Analyzing evidence produced by others is a "sufficiently reliable" method in this context. *See Charalambopoulos v. Grammer*, No. 3:14-CV-2424, 2017 WL 930819, at *16 (N.D. Tex. Mar. 8, 2017) (finding sufficiently reliable a criminal investigator and forensic sciences consultant's report that relied on others' evidence). Finally, as explained, his report is a reliable application of the principles and methods to the facts.

Mr. Ybanez's report is relevant, reliable, and within his qualifications. To the extent Defendants disagree with Mr. Ybanez's opinions, they may contest their weight at trial. *Meltzer/Austin Rest. Corp. v. Benihana Nat'l Corp.*, No. A-11-CV-542, 2014 WL 1333209, at *3 (W.D. Tex. Apr. 1, 2014) ("The Court need not exclude an expert's testimony simply because another party disagrees with its conclusions."). Accordingly, Defendants' objection to the Magistrate Judge's recommendation that this Court overrule Defendants' objection to Mr. Ybanez's is **OVERRULED**.

CONCLUSION

All of Defendants' objections to the Magistrate Judge's Findings, Conclusions, and Recommendations are overruled. The Court **ADOPTS** the Magistrate Judge's Findings, Conclusions, and Recommendations. Accordingly, Defendants' Second Motion for Summary Judgment (ECF

No. 96) is **DENIED**, and Defendants' Objection to Plaintiffs' Summary Judgment Evidence is **OVERRULED**.

**SO ORDERED.**

March 26, 2025

MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE